Clarence H. Cobbs, Appellant, v. The Chicago Defender and Robert S. Abbott Publishing Company, Appellees.

Gen. No. 41,476.

Opinion filed January 20, 1941.

BERNARD ALLEN FRIED, of Chicago, for appellant.

EARL B. DICKERSON and TRUMAN K. GIBSON, JR., both of Chicago, for appellees.

MR. JUSTICE McSURELY delivered the opinion of the court.

Plaintiff filed a complaint alleging libel by defendants; a motion to strike was sustained and leave given plaintiff to file an amended complaint; the court sus-

tained a motion to strike this and dismissed the cause, and plaintiff appeals.

The court based its ruling upon the conclusion that the publication complained of in the amended complaint does not constitute a libel.

The amended complaint alleged that plaintiff was a person with good name and reputation in the city of Chicago, held in high esteem by his neighbors and among the people of his race where he resides; that he is a single man, living with his mother and other relations in a household maintained by him; that he is an ordained minister and has been pastor of a church located in the city of Chicago for about ten and a half years, and has been held in high esteem as a preacher of the gospel, of unimpeachable integrity and virtue; that he was president of the board of trustees of his church and by reason of sermons delivered by him over the radio his name had spread throughout the city of Chicago as an outstanding character, and that the membership in his church had grown to be in excess of 3,000 persons.

That defendants were the owners and publishers of a newspaper published in Chicago known as The Chicago Defender, and that defendants, wickedly and maliciously intending to bring plaintiff into public disgrace, on November 18, 1939, in Chicago, Illinois, wickedly and maliciously composed and published in that newspaper false, malicious and defamatory libel concerning plaintiff. The complaint sets out at some length the alleged libelous matter. Summarized, the article under a headline reading "Rev. Cobb Denies Scandal; Defends Self Against Rumors in Broadcast," asserted that plaintiff, pastor of the church above described, was "facing the possibility of questioning by State's Attorney's police concerning widespread rumors of a scandalous nature"; that these rumors have been so general that plaintiff had to make his defense over the air on several of his broadcasts. The article asserted

that "the city has been astir with stories connecting the minister with an unsavory incident of serious proportions"; that plaintiff showed a reluctance to discuss the rumors, and when, in response to his inquiry, was told that no public records "of such a happening" had been found, then said he had nothing to discuss; that well known citizens and holders of high city offices were involved in the rumor and an attempt had been made to avert a scandal; that authoritative sources said, "the State's Attorney's office is definitely interested in the rumors and has already launched an investigation"; that the Chicago Crime Commission and the Neighborhood Protective Association "have taken cognizance of the rumors and have assigned investigators to run them down." There was also a statement that other information with reference to the rumors would be published in the next edition of the paper.

The complaint charged that by reason of this libel and the false statements in defendants' publication, plaintiff has been greatly injured in his good name, credit and reputation, brought into public hatred, contempt and scandal, his reputation as said pastor has been injured and his standing in the congregation and community has suffered.

Paragraph 402, ch. 38, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. 37.348], defines a libel as "a malicious defamation, expressed either by printing, or by signs or pictures, or the like, tending . . . to impeach the honesty, integrity, virtue or reputation or publish the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or financial injury." Newell, in his work on Slander and Libel (4th Ed.) § 5, says: "Everything printed or written which reflects on the character of another, and is published without lawful justification or excuse, is a libel, whatever the intention may have been. . . . Any written words are defamatory which impute to

the plaintiff that he has been guilty of any crime, . . . immorality, vice or dishonorable conduct, or has been accused or suspected of any such misconduct; . . . or which have a tendency to injure him in his office, profession, calling or trade. And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn or ridicule. . . ."

In many cases it has been held that a clergyman in the practice of his profession must maintain a spotless reputation, and any publication which tends to injure him or affects his qualifications for the performance of his duties is libelous *per se*. *Potter v. New York Evening Journal Pub. Co.*, 68 App. Div. 95, 74 N. Y. S. 317, where the opinion quoted with approval from *Chaddock v. Briggs,* 13 Mass. 252; ". . . ministers of the gospel are teachers and exemplars of moral and Christian duty, and a pure and even unsuspected moral character is necessary to their usefulness in the community; and so essential is that character to the salutary administration of the ministerial office that even a reputation for immorality, although not supported by full proof, might, in some cases, be a sufficient ground for a removal." In *Cole v. Millspaugh,* 111 Minn. 159, it was held as libelous *per se* to write of a clergyman, "I would not have anything to do with him or touch him with a ten-foot pole." The opinion said "It is not necessary to descend to vulgar abuse, or to make specific charges of crime, in order to expose one to hatred, contempt, or ridicule, or to injure him in his business or occupation." In *Jones v. Roberts,* 73 Vt. 201, a letter was published to the effect that the plaintiff's conduct with a woman was entirely unbecoming of him as a married man and a minister of the gospel. It was said these words would have a natural tendency to injure him in his profession as a minister. Many other cases might be cited to the same effect.

Referring to the publication on which this suit was based, there can be no escape from the conclusion that it tended to injure the reputation of plaintiff, and

especially to damage him with reference to his qualifications as a minister of the gospel. Reading of the alleged libelous matter impresses one so strongly to this effect that no argument is needed to support the conclusion that the publication was libelous *per se.*

The fact that the publication of the scandalous matter purports to be based on rumor is no defense. Publication of libelous matter, although purporting to be spoken by a third person, does not protect the publisher, who is liable for what he publishes. *Stephens v. Commercial-News Co.,* 164 Ill. App. 6; *Cooper v. Lawrence,* 204 Ill. App. 261, 270; *O'Malley v. Illinois Publishing & Printing Co.,* 194 Ill. App. 544. Very pertinent to this point is the comment in Newell on Slander and Libel (4th Ed.) § 300. "A man cannot say there is a story in circulation that A. poisoned his wife or B. picks C.'s pocket in the omnibus, or that D. has committed adultery, and relate the story, and when called upon to answer say: 'There was such a story in circulation; I but repeated what I heard, and had no design to circulate it or confirm it'; and for two very plain reasons: (1) The repetition of the story must in the nature of things give it currency; and (2) the repetition without the expression of disbelief will confirm it. The danger—an obvious one—is that bad men may give currency to slanderous reports, and then find in that currency their own protection from the just consequences of a repetition."

The great weight of authority as well as the better reasoning is against the ruling of the trial court striking the amended complaint. Defendants should have been ruled to answer.

For the reason stated the ruling of the trial court sustaining the motion to strike the amended complaint is reversed and the cause is remanded for further proceedings as suggested.

*Reversed and remanded with directions.*

O'CONNOR, P.J., and MATCHETT, J., concur.