A. CURRIE MAIMON, Plaintiff-Appellant and Cross-Appellee, v. THE SIS-
TERS OF THE THIRD ORDER OF ST. FRANCIS, *et al.*, Defendants-Appel-
lees and Cross-Appellants.

Third District   No. 3—85—0394

Opinion filed March 27, 1986.

John M. Bowlus, of Chicago, and Raymond C. Rose, of Peoria, for appel-
lant.

Stephen T. Moore, of Thomas & Hinshaw, Culbertson, of Rockford, and
D. Kendall Griffith, H. Anne McKee and Lynn D. Dowd, all of Hinshaw,
Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellees.

JUSTICE HEIPLE delivered the opinion of the court:

This is the second appeal involving plaintiff's staff privileges at St.
Anthony Hospital in Rockford. A detailed explanation of the events re-
lating to plaintiff's first appeal may be found in the opinion of the
Fourth District Appellate Court which is reported at 120 Ill. App. 3d
1090. (*Maimon I*). Only those facts necessary to the resolution of this
appeal will be set forth.

Essentially, the first appeal involved events culminating in the deci-

sion by the board of managers of St. Anthony Hospital (St. Anthony's) on March 17, 1982. On that date, the board voted to affirm the expulsion of Currie Maimon, M.D. (plaintiff), from the hospital staff effective April 1, 1982. The vote followed action taken by the credentials committee and an *ad hoc* committee selected from the entire medical staff, pursuant to the hospital bylaws.

On March 30, 1982, plaintiff filed a complaint in the circuit court of McLean County against the Sisters of the Third Order of St. Francis (St. Francis), an Illinois not-for-profit corporation, seeking injunctive and other relief arising from the expulsion of plaintiff from the staff of St. Anthony's. St. Francis operates several hospitals in Illinois, one of which is St. Anthony's. Following entry of a preliminary injunction, both parties filed motions for summary judgment.

On February 7, 1983, the circuit court granted plaintiff's motion for summary judgment and ordered that the hospital be permanently enjoined from expelling plaintiff, or interfering in any way with his staff privileges, based on matters presented to the *ad hoc* committee.

The hospital appealed the decision to the Appellate Court, Fourth District. On December 30, 1983, our Fourth District court reversed, finding that the injunction was improvidently granted. The court stated at the outset of its opinion that judicial review of a reduction or expulsion of hospital staff privileges is limited to the question of whether the procedures employed were in accordance with hospital bylaws. The court found there was no bylaw violation or inequitable treatment of plaintiff, and remanded the case with directions to the trial court to enter summary judgment for the defendant.

On February 3, 1984, plaintiff filed a petition for leave to appeal with the Supreme Court of Illinois. The application was denied on April 3, 1984.

This appeal involves events culminating with the posting of a memorandum on May 6, 1983, announcing the termination of plaintiff's staff privileges at St. Anthony's. In response to plaintiff's application for reappointment, the credentials committee, on May 5, 1983, sent a letter recommending to the medical staff that he not be reappointed.

In their letter, the credentials committee advised that in the course of formulating the recommendation not to reappoint, it had concluded that plaintiff's medical staff privileges terminated at the close of the 1982 medical staff year. The committee also advised that no temporary privileges were subsequently awarded. The letter specifically stated that, by copy of this letter, the administrator of the hospital, Kevin Schoeplein, would be notified of this determination.

On May 6, 1983, Schoeplein directed that a notice addressed to

emergency room personnel, admitting personnel, centralized scheduling personnel and nursing coordinators be posted. The memo stated:

"Effective May 6, 1983, Dr. Maimon has no admitting or clinical privileges at St. Anthony Hospital Medical Center. No patients shall be admitted or treated by Dr. Maimon.

If any of Dr. Maimon's patients present themselves to your area, notify the nursing coordinator on duty who will follow through with Dr. Peterson, Chief of Staff for providing care for these patients."

On October 10, 1983, the board of managers, following the recommendation by the medical staff to reject plaintiff's application for reappointment, denied the plaintiff's application.

Plaintiff then instituted this action against St. Francis. The complaint also named as defendants, Kevin Schoeplein and Douglas Bruce, both of whom were hospital administrators. Count I of the complaint sought declaratory, injunctive and other relief. It alleged that: (1) the reappointment procedure violated the hospital bylaws; (2) that the act by Schoeplein in posting the May 6, 1983, memo was done without authority; and (3) that there was a lack of proof that his treatment of a patient was done at an unacceptable level.

Count II sought compensatory and punitive damages against the hospital and Schoeplein for libel *per se* resulting from the memorandum of May 6, 1983. The plaintiff alleged that the imputation arising from the memo was that plaintiff was incompetent and unfit to practice medicine and that such imputation was false, malicious and was made with the intent and effect of injuring his reputation.

Count III sought compensatory and punitive damages and alleged that beginning sometime in 1980, the defendants and unknown others entered into a civil conspiracy, the object of which was to terminate plaintiff's privileges at St. Anthony's. Plaintiff claimed that the expulsion proceedings in 1981 consisted of gross violations of hospital bylaws; that the charges and hearings in 1981 and 1982 against plaintiff were frivolous and were brought to drive the plaintiff from the staff; that no reasonable basis existed to deny 1983 staff privileges; and that defendants' conduct had been malicious, wanton and wilful. The complaint claimed that in furtherance of the conspiracy the defendants caused the circulation and publication of the May 6 memo, caused plaintiff to be accused falsely of engaging in unacceptably low medical practices, and denied plaintiff's application for reinstatement without cause.

On April 25, 1984, defendants filed a motion to dismiss all three counts of the complaint on the ground that *Maimon I* would act to bar

the plaintiff's complaint in *Maimon II* under the doctrines of *res judicata* and collateral estoppel. On December 26, 1984, the circuit court granted defendants' motion to dismiss count I with prejudice. The court denied the motion to dismiss counts II and III. Plaintiff has not appealed from the dismissal of count I.

Defendants' second motion to dismiss counts II and III was granted on May 22, 1985. Count II, the libel claim, was challenged on the basis that the matters set forth in the memo were true and nonactionable; that there was nothing defamatory in the language of the May 6, 1983, memo; that the innocent-construction rule applied; and that the notice was privileged and, therefore, nonactionable.

Defendants moved to dismiss count III, the conspiracy count, on the ground that it failed to allege with required particularity the facts constituting any unlawful act. Defendants also argued that the conspiracy count was defective because it alleged a conspiracy between a corporation and two of its agents and employees.

On May 22, 1985, the circuit court entered an order granting defendants' second motion to dismiss counts II and III with prejudice. Plaintiff appeals from this order.

Because count II of plaintiff's complaint does not aver any special damages, his right to recovery rests upon whether the alleged defamatory notice is libel *per se*. In *Fried v. Jacobson* (1983), 99 Ill. 2d 24, the supreme court set out four categories of cases which gave rise to a cause of action for defamation without a showing of special damages. They are:

" '1. Those imputing the commission of a criminal offense;

2. Those imputing infection with communicable disease of any kind which, if true, would tend to exclude one from society;

3. Those imputing inability to perform or want of integrity in the discharge of duties of office or employment;

4. Those prejudicing a particular party in his profession or trade.' " (99 Ill. 2d 24, 27.)

The foregoing is the law of this State except where changed by statute. See Ill. Rev. Stat. 1985, ch. 126, par. 1 *et seq.*

■ The plaintiff argues that the notice is libel *per se* because it has prejudiced him in his profession by imputing him to be incompetent and unfit to practice medicine. In determining whether a written statement is actionable *per se*, we are guided by the innocent-construction rule as set forth in *Chapski v. Copley Press* (1982), 92 Ill. 2d 344. In *Chapski*, the supreme court modified the rule of innocent construction to read:

"[A] written or oral statement is to be considered in context, with the words and implications therefrom given their natural

and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted or reasonably be interpreted as referring to someone other than the plaintiff it cannot be actionable *per se.* This preliminary determination is properly a question of law to be resolved by the court in the first instance; ***." 92 Ill. 2d 344, 352.

Whether the notice may be innocently interpreted depends upon whether there are any reasons why a physician would no longer have staff privileges which do not disparage the physician's ability to practice his profession. Because the notice contains no explanation of why the plaintiff's privileges were terminated, any ground for such termination is equally reasonable. Examination of the plaintiff's complaint reveals that the plaintiff himself suggests one reason for termination may have been his failure to file a timely application for reappointment as required by medical staff bylaws. Although we deem this to be the most logical innocent construction, it is not the only one which the plaintiff has indirectly suggested. The notice may be innocently construed as an indication that the plaintiff has resigned from staff, or may have stopped practicing in the area. Our Fourth District Appellate Court in *Maimon I* noted that termination of staff privileges may be based on "mundane staffing decisions." *Maimon v. Sisters of the Third Order of St. Francis* (1983), 120 Ill. App. 3d 1091, 1102.

■ Applying the *Chapski* innocent-construction rule to the facts and circumstances before us, we conclude that the notice may reasonably be read as neither imputing to the plaintiff an inability to practice his profession nor prejudicing the plaintiff's reputation in the community. (*Chapski v. Copley Press* (1982), 92 Ill. 2d 344.) Since the notice of May 6, 1983, may be innocently interpreted, it is not actionable as a matter of law.

We note that in addition the memo is factually correct. This is not insignificant. A hospital certainly has not only the right but the duty to inform its members of changes in staff. In exercising this right, a hospital should act in good faith and use discretion so as to insure such communications do not give rise to ominous imputations. As we explained above, we are not confronted with such a communication.

The first paragraph of the notice states:

"Effective May 6, 1983, Dr. Maimon has no admitting or clinical privileges at St. Anthony Hospital medical Center. No patient shall be admitted or treated by Dr. Maimon."

The plaintiff relies on the injunction granted by the circuit court on February 7, 1983, enjoining the hospital from expelling him, or interfering with his staff privileges, to support his assertion that he was on

staff on May 6. Such reliance is misplaced. On December 30, 1983, when the Fourth District Appellate Court held the injunction was improvidently granted, the plaintiff lost any rights he may have acquired while the injunction was in effect.

> "A party to a decree cannot acquire any rights thereunder while the same is subject to review which he can assert after the decree is reversed, since the effect of the reversal is to abrogate the decree and leave the cause as it stood prior to the entry of the decree." (*Willett Co. v. Carpentier* (1954), 4 Ill. 2d 407, 412.)

The cause as it stood prior to the entry of the circuit court's injunction was that St. Anthony's had decided that effective April 1, 1982, the plaintiff would no longer have staff privileges.

Notwithstanding that when the notice was posted on May 6, 1983, the defendants were under an injunction not to interfere with the plaintiff's staff privileges, that injunction was reversed. The effect of the reversal by the appellate court in *Maimon I* is to remove the efficacy of the circuit court's injunction. The plaintiff's staff privileges had expired at the end of 1982 and had not been renewed. Therefore, the posted notice was simply a communication to the hospital personnel to inform them that Dr. Maimon no longer had hospital staff privileges.

■ Count III of the complaint charges the defendant with engaging in a civil conspiracy to damage the plaintiff in his profession. A civil conspiracy giving rise to a cause of action for damages has been defined as a combination of two or more persons to accomplish by concerted action either (1) a lawful purpose by unlawful means, or (2) an unlawful purpose by lawful means. (See *Kovar v. Bremer* (1935), 281 Ill. App. 505.) The basis of the conspiracy is not the combination, but the wrongful act alleged to have been done in furtherance of the agreement that may result in liability. *Dymek v. Nyquist* (1984), 128 Ill. App. 3d 859, 866.

The plaintiff primarily seeks to establish a conspiracy to accomplish an unlawful purpose by lawful means. His principle argument is that defendants entered into a conspiracy, the object of which was the termination of plaintiff's staff privileges at St. Anthony's. In the alternative, plaintiff argues that certain of the defendants' acts were unlawful, malicious, wanton and wilful. The plaintiff alleged that the defendants in furtherance of the conspiracy committed the following unlawful acts:

> "(a) caused the circulation and publication of the memorandum of May 6, 1983, which defamed the plaintiff;
>
> (b) caused the plaintiff to be accused falsely of engaging in unacceptably low medical practices;

(c) denied plaintiff's application for reinstatement to the St. Anthony's medical staff without cause."

Thus, the plaintiff also alleges the defendants engaged in a conspiracy to accomplish a lawful purpose by unlawful means.

The plaintiff argues that the *Maimon I* court did not reach a factual determination of the lawfulness of his removal. We disagree. A physician's termination from a private hospital is subject to limited review. An appellate court may only consider whether a hospital followed its own bylaws. (*Spencer v. Community Hospital* (1980), 87 Ill. App. 3d 214, 216.) It was conclusively established in *Maimon I* that St. Francis has followed its bylaws. Consequently, the plaintiff's staff privileges had terminated as of April 1, 1982. In reaching its decision, the *Maimon I* court fully adjudicated the lawfulness of the plaintiff's removal. We need not consider the lawfulness of the means employed and the purpose sought in denying the plaintiff's application for reappointment since it is *res judicata*.

Count I of the plaintiff's complaint sought to establish that defendants' actions is not reappointing him were unlawful. The court below deemed this count barred by the doctrines of *res judicata* and collateral estoppel. Because the plaintiff did not appeal this ruling, it constitutes an adjudication on the merits against him. (87 Ill. 2d. R. 273.) Thus, just as *Maimon I* conclusively established that St. Francis acted lawfully when it terminated the plaintiff's staff privileges, the lower court's dismissal of count I, which plaintiff did not appeal, conclusively established that the instant defendants acted lawfully in denying the plaintiff's application for reappointment. Furthermore, the fact that the plaintiff possessed no staff privileges as of April 1, 1982, renders the purported object of defendants' conspiracy an impossibility. The defendants could not conspire to deprive the plaintiff of a privilege which he did not possess. Absent unlawful conduct, we cannot conclude that the termination of the plaintiff's staff privileges was an unlawful purpose. For, where one exercises a legal right only, the motive which actuates him is immaterial. Whether the plaintiff's medical practice may have been destroyed because of his expulsion from St. Anthony's is, quite simply, not the issue. *De L'Ogier Park Development Corp. v. First Federal Savings & Loan Association* (1972), 6 Ill. App. 3d 807, 811-812.

For the foregoing reasons, the circuit court of Peoria County's order granting defendants' second motion to dismiss is affirmed.

Affirmed.

BARRY and WOMBACHER, JJ., concur.