CHRISTY S. BERKOS, Plaintiff-Appellant, v. NATIONAL BROADCAST-
ING COMPANY, INC., *et al.*, Defendants-Appellees.

First District (4th Division) No. 85—2552

Opinion filed July 30, 1987.—Modified on denial of rehearing
November 5, 1987.

JIGANTI, J., concurring in part and dissenting in part.

William J. Harte, Ltd., of Chicago (William J. Harte and Joseph E. Tighe, of counsel), for appellant.

Isham, Lincoln & Beale, of Chicago (Don H. Reuben, William J. Campbell, Jr., Samuel Fifer, and Dale M. Cohen, of counsel), for appellees.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Christy S. Berkos (Berkos) appeals from the trial court's dismissal of his complaint against the National Broadcasting Company, Inc. (NBC), and Peter Karl (Karl) based upon their television broadcast of a particular news program segment pertaining to a Federal criminal investigation commonly known as "Operation Greylord." In the

broadcast, NBC and Karl referred to certain actions taken by Berkos in his judicial capacity. The complaint alleged that the broadcast's references to Berkos, in their overall context, constituted libel, an appropriation of Berkos' name or likeness for the commercial advantage of Karl and NBC, the placement of Berkos in a false light, and the intentional infliction of emotional distress upon Berkos, and requested compensatory as well as punitive damages. After the trial court dismissed the entire pleading, Berkos filed a motion for reconsideration which also asked for leave to file an amended complaint. The trial court denied both requests, and Berkos appeals.

Upon review, Berkos urges essentially that the trial court's dismissal of his claims was in error because the method by which NBC and Karl structured their report imputed to Berkos the commission of a crime, that is, the acceptance of an alleged bribe of a Chicago police department police officer to "influence" Berkos' disposition of a criminal case pending before him. NBC and Karl contend that their report was summarized from a Federal indictment against the police officer resulting from Operation Greylord and Cook County circuit court records to which the indictment referred. They maintain, in essence, that they are entitled to report to the viewing public the contents of official court documents, and that as a result Berkos' complaint was correctly dismissed by the trial court.

The parties' underlying legal arguments implicate fundamental principles regarding the news media's significant role in informing the public of the decisions of public officials. (See, *e.g., Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 491-92, 495, 43 L. Ed. 2d 328, 347-48, 95 S. Ct. 1029, 1044-45; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 339-41, 41 L. Ed. 2d 789, 804-06, 94 S. Ct. 2997, 3006-07; *Time, Inc. v. Pape* (1971), 401 U.S. 279, 284-92, 28 L. Ed. 2d 45, 50-55, 91 S. Ct. 633, 636-42.) However, the appeal before us does not afford an opportunity for the final application of those fundamental principles. This case comes before us *on the pleadings*. As a result, we are confronted only with the more preliminary and threshold questions of whether Berkos' complaint is legally sufficient to entitle him to proceed further on the merits of his claims, and if so, whether the additional, affirmative matters presented by NBC and Karl defeat Berkos' entitlement to further proceedings.

For the reasons set forth in detail below, we reverse and remand for further proceedings consistent herewith the trial court's dismissal of Berkos' libel and false-light claims. We affirm the trial court's dismissal of Berkos' complaint to the extent that it purported to plead claims for the commercial appropriation of Berkos' name or likeness

and the intentional infliction of emotional distress.

BACKGROUND

Berkos has been a circuit judge in the circuit court of Cook County, Illinois, since his election to this office in 1980. As alleged in his pleading, NBC and Karl published a program on their 10 p.m. television newscast of December 19, 1983, which referred, *inter alia*, to certain actions taken by Berkos in his judicial capacity. The complaint does not specifically allege with particularity the contents of any portion of the news broadcast. However, NBC and Karl provided to both the trial court and this court upon review a transcript of the pertinent portion of the broadcast, as well as a videotape thereof, and Berkos does not contest the authenticity of these documents or the veracity of their contents. As a result, we state the content of that broadcast in its entirety here. The transcript reads as follows:

"CAROL MARIN: The Greylord investigation into judicial corruption is getting bigger. Peter Karl reports new names of judges in court records—judges involved in cases where pay-offs were allegedly made. Peter ***

PETER KARL: Carol, sources in the legal community tell Channel Five News that FBI Agents have been searching court records from the 2nd and 3rd District, in Skokie and Niles. And we have also learned that the U.S. Attorney's Office is getting more and more cooperation from more attorneys with knowledge of judicial corruption.

And, tonight, we can report that we found the names of five more judges which appear in cases where the FBI allegedly put in 'the fix.'

The new names of the judges surfaced in the case against Ira Blackwood, a Chicago Police Officer assigned to Traffic Court, but a man believed to have connections in many other courtrooms. The indictment against Blackwood charges him with 10 counts of extortion and racketeering. The government alleges that he solicited and received $4400 to influence 10 cases. All of the charges involve pay-offs from undercover FBI Agent David Ries. Two cases involved $800 in pay-offs. Judge John Murphy heard the cases; Judge Murphy was also indicted last week. The Blackwood cases were used against him.

In another case, Judge Christy Berkos was on the bench at Branch 29 when Kenneth Rollings who was charged with battery, was found 'not guilty.' It is alleged that $500 was paid to influence that case.

Two cases involved Judge Daniel O'Brien, at Branch 23; the charges were battery. A $400 and a $600 bribe were allegedly paid. Both defendants were found 'not guilty' by Judge O'Brien.

Judge Raymond Sadini [sic], of Branch 26, heard an FBI case of retail theft; there was a $400 bribe allegedly paid. The case was dismissed with 'leave to reinstate' by Judge Sadini [sic].

Judge Martin Hogan heard two cases involving possession of a stolen auto; two $600 bribes were allegedly paid. Both cases had a finding of 'no probable cause'; they were dismissed by Judge Hogan.

Judge Arthur Ellis heard the final case, in Branch 45; it was a battery charge. An alleged bribe of $400 was paid; the verdict was 'not guilty.' Judge Ellis said he knows nothing about the case, he hasn't been contacted by the FBI and that he hasn't talked to Blackwood, since he was assigned to 45.

And Circuit Court Judge Wayne Olson, who faces 55 counts of racketeering, extortion and mail fraud, today, in an exclusive interview, said he'll be exonerated.

JUDGE WAYNE OLSON: I'm confident I'm innocent of all the charges, Peter. And it is our intention to plead 'not guilty' to all of them.

KARL: We talked with Judge Berkos tonight, just a few moments ago; he said he substituted in Branch 29 a few times but that he doesn't know Ira Blackwood or the FBI Agent Ries.

Attempts to reach the other judges failed. Judges Berkos, O'Brien, Hogan, Sadini [sic] and Ellis have not been charged with any criminal wrongdoing. The FBI has subpoenaed all the court records to these cases for the Greylord investigations.

Carol and Ron, the story intensifies."

The videotape of the broadcast shows that a photograph of Berkos and the portion of the Blackwood indictment regarding the Rollings case accompanied the presentation of the fourth paragraph set forth above regarding Berkos.

Berkos commenced an action against NBC and Karl, claiming that the broadcast constituted libel, a commercial appropriation of his name and likeness, the placement of Berkos in a false light before the viewing public, and the intentional infliction of emotional distress. He alleged, inter alia, that NBC and Karl "caused the program to be published following [Berkos'] express statement to them or their representatives that his normal assignment was a courtroom in the Daley

Center hearing jury civil matters and that he had been a substitute judge for one or two days during the Christmas holidays in 1981 in the Branch 29 courtroom where the subject case had been heard, knew none of the parties involved and had not received anything of value to influence the subject case or any other case."

Berkos stated that "[b]y reason of said picture and portrayal, [NBC and Karl] falsely, wrongfully and maliciously imputed to [Berkos] the commission of a crime," that NBC and Karl "falsely, wrongfully and maliciously structured portions of the program to portray [Berkos] as a person who participated in the acceptance of a bribe to influence the disposition of a case which had been heard by [him]," and that they "portrayed" his "name and picture *** together with the disposition of the case and the bribe in such a way as to indicate to any person viewing the program that [Berkos] had in fact accepted the bribe."

In response to Berkos' pleading, NBC and Karl filed a motion to dismiss the complaint on the basis that it failed to state a claim for which relief could be granted (Ill. Rev. Stat. 1985, ch. 110, par. 2—615) and that it was defeated by other affirmative matter not alleged in Berkos' complaint (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)). Affidavits of Karl and an NBC research associate were presented to support the motion to the extent that it relied upon affirmative matter not appearing in Berkos' pleading. A copy of the Blackwood indictment and certain Cook County circuit court records were also attached, as well as a videotape recording of the relevant portion of the broadcast, a transcript thereof, and an unauthenticated Xerox copy of the front page of a court document in the Rollings case, in which Rollings requested refund of bail to his attorney of record, approved by Judge Berkos.

Following briefing and oral argument, the trial court allowed the motion to dismiss for failure to state a claim and dismissed Berkos' complaint in its entirety. Berkos later sought reconsideration of the court's dismissal order. He also requested leave to amend his complaint, orally representing to the trial court that he would allege facts relating to NBC's prebroadcast "hype" and additional allegations concerning the actual malice of NBC and Karl. Berkos' motion for reconsideration and leave to amend was denied, and he appeals.

OPINION

I. DEFAMATION OF CHARACTER

Berkos maintains that his pleading stated a claim for libel *per se*

on the ground that the news broadcast "imputes [to Berkos] the commission of a criminal offense (accepting a bribe) as well as imputing a want of integrity in the discharge of [Berkos'] duties as a circuit judge." NBC and Karl respond that the trial court's decision was proper because their broadcast is reasonably given an innocent construction, is substantially true, and is privileged as a fair and accurate report of judicial records. They also argue that Berkos' libel action was correctly dismissed because it failed to allege the specific statements claimed to be defamatory and did not state sufficient facts regarding the alleged actual malice of NBC and Karl. We consider each of these questions in the context of the appropriate section of the Illinois Code of Civil Procedure upon which the particular issue is founded.

LEGAL SUFFICIENCY OF THE LIBEL CLAIM

Berkos' libel complaint alleges that NBC and Karl made statements in their broadcast that, in their overall context, accused Berkos of accepting a bribe and called into question his judicial integrity. He alleges that this accusation was defamatory, false, and made wilfully, intentionally, and maliciously. NBC and Karl contend that Berkos' libel claim is legally insufficient to state a cause of action for libel *per se* of a public official.

■ As NBC and Karl correctly note, Berkos' pleading is technically defective because it neglected to allege with specificity the statement or statements which Berkos believes to constitute libel *per se*. (See, *e.g., Heying v. Simonaitis* (1984), 126 Ill. App. 3d 156, 163, 466 N.E.2d 1137.) Nevertheless, NBC and Karl presented, to both the trial court and this court upon review, the videotape and a transcript of the pertinent portion of the broadcast which form the basis of the instant litigation. Berkos does not question their authenticity or veracity, and indeed relies thereon to form the basis of his legal and factual arguments before the trial court and this court on appeal. Therefore, we assume for the purpose of additional analysis that the videotape and its transcript constitute the declarations which Berkos maintains to be libelous *per se*, allegation of which would cure the technical deficiencies of Berkos' complaint in this regard. See generally *Village of Pawnee v. Knostman* (1983), 115 Ill. App. 3d 842, 854-55, 450 N.E.2d 1272.

NBC and Karl also contend that Berkos' libel claim is insufficient to state a claim for libel *per se* because their remarks are not reasonably interpreted as defamatory. They also argue that their references to Berkos are reasonably given an innocent construction. Because of

the overlap between these two questions in the instant appeal, we consider them in tandem here. See generally, *e.g.*, *American International Hospital v. Chicago Tribune Co.* (1985), 136 Ill. App. 3d 1019, 483 N.E.2d 965; *Dauw v. Field Enterprises, Inc.* (1979), 78 Ill. App. 3d 67, 397 N.E.2d 41.

██ █ "The gravamen of an action for defamation is not the injury to plaintiff's feelings, but damage to his reputation in the eyes of other persons." (33A Ill. L. & Prac. *Slander & Libel* ch. 2, sec. 11, at 23 (1970), citing *Cowper v. Vannier* (1959), 20 Ill. App. 2d 499, 156 N.E.2d 761; *Voris v. Street & Smith Publications* (1947), 330 Ill. App. 409, 71 N.E.2d 338.) "A statement is defamatory if it impeaches a person's integrity, virtue, human decency, respect for others, or reputation and thereby lowers that person in the estimation of the community or deters third parties from dealing with that person." (*Newell v. Field Enterprises, Inc.* (1980), 91 Ill. App. 3d 735, 741, 415 N.E.2d 434, 440.) The defendant's allegedly defamatory statement should be construed by the court in the sense which viewers of "common and reasonable understanding would ascribe to them ***. [Citation.]" *Proesel v. Myers Publishing Co.* (1960), 24 Ill. App. 2d 501, 509, 165 N.E.2d 352, 356; see also *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 157, 419 N.E.2d 350.

██ █ Although the question of whether a statement is reasonably understood as defamatory is generally a question of fact for the jury (see, *e.g.*, *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, citing *Troman v. Wood* (1975), 62 Ill. 2d 184, 189, 340 N.E.2d 292), it is nevertheless the role of the court to determine, in the first instance, if the allegedly defamatory remark is reasonably susceptible of an innocent construction. Under the innocent construction rule, "a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted *** it cannot be actionable *per se.*" *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199; see also *Owen v. Carr* (1986), 113 Ill. 2d 273, 279, 497 N.E.2d 1145; *Maimon v. Sisters of the Third Order of St. Francis* (1986), 142 Ill. App. 3d 306, 309-11, 491 N.E.2d 779; *Crinkley v. Dow Jones & Co.* (1983), 119 Ill. App. 3d 147, 150-51, 456 N.E.2d 138.

NBC and Karl urge that the broadcast's specific references to Berkos, when given their natural and ordinary meaning in the context of the pertinent portion of the news broadcast, state only the significant details of the Blackwood indictment and the Cook County circuit court records referred to in the indictment, Berkos' statements to

Karl regarding the Rollings case, and the fact that Berkos had not been charged for any criminal act. Berkos maintains that the broadcast's references to him, in conjunction with the other portions of the broadcast, accuse Berkos of having accepted the alleged bribe from Blackwood in order to influence Berkos' disposition of the Rollings case.

■ We conclude that a reasonable viewer could interpret the remarks of NBC and Karl, in their overall context, as defamatory statements regarding Berkos' disposition of the Rollings case. Furthermore, upon application of the innocent construction rule, we find the construction suggested by NBC and Karl a more strained interpretation of their broadcast which places an undue emphasis upon certain portions of the references to Berkos, without due regard to the remainder of the broadcast's overall context. The question of whether the broadcast's references to Berkos in their overall context are, in fact, defamatory *per se* remains a question of fact to be determined on remand. See *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195.

The references to Berkos made by NBC and Karl were contained in the context of Carol Marin's introductory remarks about the "Greylord investigation into judicial corruption" and the "new names of judges in court records—judges involved in cases where pay-offs were allegedly made." References to Berkos were also included in the context of Karl's statements that "sources in the legal community [told] [Karl] that FBI Agents have been searching court records from *** [branch courts]" and that Karl "also learned that the U.S. Attorney's Office is getting more and more cooperation from more attorneys with knowledge of judicial corruption." Karl then represented, "[W]e can report that we found the names of five more judges which appear in cases where the FBI allegedly put in 'the fix.' "

In this overall context, Karl reported that an undercover FBI agent had allegedly bribed Blackwood to influence disposition of various criminal cases. Karl then noted that one of these cases involved Rollings, that Berkos presided over the Rollings case, that Rollings was found not guilty of battery by Berkos, and that "[i]t is alleged that $500 was paid to influence that case." Karl later reported that Berkos had stated that he had been assigned as a substitute judge in the branch court when the Rollings case was decided, and that Berkos said he did not know Blackwood or the FBI undercover agent. Thereafter Karl noted that Berkos had not been charged with any wrongdoing.

In addition, Karl's references to Berkos were made in the context

of Karl's remarks regarding other circuit court judges who presided over criminal cases referred to in the Blackwood indictment. In every instance, Karl's references to each judge's disposition of a particular criminal case proceeded according to a similar framework: (1) the name of the criminal case and the fact that it was listed in the Blackwood indictment; (2) the name of the judge who presided over the criminal case; (3) the amount of the alleged bribe paid "to influence the case"; (4) the judge's disposition of the criminal case. Also, in the first criminal case to which Karl referred, Karl noted that the judge who presided therein "was also indicted last week [and that] [t]he Blackwood cases were used against [that judge]."

In addition, although Karl began his report with the representation that he would report that he had "found the names of five more judges which appear in cases where the FBI allegedly put in 'the fix,' " Karl's report thereof included an interview with a sixth circuit court judge, Wayne Olson. It does not appear from Karl's report that Olson had presided over any of the cases listed in the Blackwood indictment, or that he had been mentioned in the Blackwood indictment. Karl then stated that Olson had been charged with "55 counts of racketeering, extortion and mail fraud *** [and] said [to Karl that] he [would] be exonerated." It was at this juncture in the report that Karl noted his telephone conversation with Berkos, and stated that Berkos told Karl that Berkos had substituted in the branch court, but did not know Blackwood or the undercover FBI agent.

■ It is well established that statements made in the form of insinuation, allusion, irony, or question may be considered as defamatory as positive and direct assertions of fact. (See, e.g., Catalano v. Pechous (1980), 83 Ill. 2d 146, 419 N.E.2d 350; Makis v. Area Publications Corp. (1979), 77 Ill. App. 3d 452, 459, 395 N.E.2d 1185 (Romiti, J., dissenting), cited with approval in Chapski v. Copley Press (1982), 92 Ill. 2d 344, 351, 442 N.E.2d 195; Maclaskey v. Mecartney (1944), 324 Ill. App. 498, 58 N.E.2d 630.) Karl's remarks may not affirmatively and explicitly state that Berkos had accepted a bribe from Blackwood to "fix" the Rollings case, or that Federal authorities intended to seek an indictment of Berkos as a "corrupt judge" in Operation Greylord for that reason. However, Karl's references to Berkos, in their overall context, can be reasonably interpreted by an ordinary viewer of normal intelligence as imputing criminal involvement to Berkos. A reasonable viewer of ordinary intelligence might question what newsworthy value Karl's references to Berkos would have served, in the context of Karl's investigative report, absent the interpretation Berkos suggests.

We cannot say that the insinuation here is so equivocal or ambiguous that an innocent interpretation of the statements is equally or more reasonable. As a result the trial court's orders cannot be affirmed either on the basis that Karl's remarks would not be understood as defamatory by a reasonable viewer of ordinary intelligence, or on the ground that the remarks are more reasonably construed as innocent in their overall context. Whether Karl's remarks are privileged as a fair and accurate report of public records is a separate issue we consider subsequently herein.

■■ ■ NBC and Karl also suggest that Berkos' libel claim is legally insufficient because it fails to allege sufficient facts demonstrating that NBC and Karl acted with "actual malice." In order to state a claim that a defendant's allegedly defamatory statement was made with actual malice, a plaintiff must plead "factual allegations from which the actual malice might reasonably be said to exist. [Citation.]" (*Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 441, 444 N.E.2d 253; see also *Colson v. Capital Cities Media, Inc.* (1982), 111 Ill. App. 3d 1009, 1016, 445 N.E.2d 13.) "Actual malice" is said to be shown where the defendant made the false, defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 280, 11 L. Ed. 2d 686, 706-07, 84 S. Ct. 710, 726.) "In the *New York Times* line of cases the reckless disregard for the truth which is requisite to a proof of malice is described in subjective terms: Recklessness is said to exist only where a defendant 'in fact entertained serious doubts as to the truth of his publication' (*St. Amant v. Thompson* (1968), 390 U.S. 727, 731, 20 L. Ed. 2d 262, 267, 88 S. Ct. 1323, 1325) or where he had a 'high degree of awareness of *** probable falsity' (*Garrison v. Louisiana* (1964), 379 U.S. 64, 74, 13 L. Ed. 2d 125, 133, 85 S. Ct. 209, 216; *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 335 n.6, 41 L. Ed. 2d 789, 802-03 n.6, 94 S. Ct. 2997, 3004 n.6; *cf. Curtis Publishing Co. v. Butts* (1967), 388 U.S. 130, 153, 18 L. Ed. 2d 1094, 1110, 87 S. Ct. 1975, 1990)." *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 165-66, 419 N.E.2d 350, 359-60.

■■ We are unable to conclude that the reasonable inferences of Berkos' factual allegations, when coupled with his allegations that NBC and Karl acted "intentionally, wilfully and maliciously," are insufficient to withstand the motion to dismiss the complaint on the theory that the claim failed to state that NBC and Karl acted with "actual malice."

The allegations of Berkos' complaint, and the reasonable infer-

ences therefrom, tend to establish that Karl stated in the NBC broadcast that Karl could report the names of judges involved in judicial corruption under investigation in Operation Greylord, identified Berkos as one of these judges, and provided the details of particular instances where these judges, including Berkos, had accepted bribes from Blackwood to influence their disposition of specific criminal cases pending before them. Berkos' complaint alleged that these defamatory representations were false, and made by Karl following Berkos' explanation to Karl that Berkos was normally assigned to hear jury civil matters in the Daley Center, had been assigned as a substitute judge to the branch court when he presided over the Rollings case, and had accepted nothing of value to influence the disposition of any case over which Berkos had presided. We are not prepared to find at this preliminary juncture in these proceedings that Karl clearly and unequivocally could not have had a high degree of awareness that his allegedly false, defamatory remarks involving Berkos were probably untrue. "Although plaintiff might be unable to *prove* actual malice, it appears that he did *plead* actual malice sufficiently to state a cause of action ***." (Emphasis in original.) *Davis v. Keystone Printing Service, Inc.* (1982), 111 Ill. App. 3d 427, 443, 444 N.E.2d 253, 263.

For these reasons, we find that the allegations in Berkos' libel complaint were sufficient to survive challenge pursuant to section 2—615 of the Illinois Code of Civil Procedure, and that his pleadings satisfied the legal standards necessary to state a claim for libel *per se* of a public official.

### AFFIRMATIVE MATTERS RAISED BY NBC AND KARL

The motion to dismiss of NBC and Karl, to the extent that it alleged affirmative matters to Berkos' libel claim, argued that the claim should be dismissed because the alleged defamatory remarks made in the broadcast are subject to an innocent construction, substantially true, and privileged as a fair and accurate summary of pertinent court documents. These contentions are renewed in this appeal. Because the innocent construction issue is considered above, it need not be restated here.

When presented with a motion to dismiss based on section 2—619(a)(9) of the Illinois Code of Civil Procedure, the court must determine whether "the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the [plaintiff's] claim." (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).) The motion admits all well-pleaded factual allegations in the plaintiff's

complaint and seeks to establish ground for dismissal as a matter of law. See, *e.g., Perkhaus v. Chicago Catholic High School Athletic League* (1986), 140 Ill. App. 3d 127, 488 N.E.2d 623; *Austin View Civic Association v. City of Palos Heights* (1981), 85 Ill. App. 3d 89, 405 N.E.2d 1256.

### FAIR REPORT PRIVILEGE

NBC and Karl maintain that their broadcast was privileged as a fair and accurate report of the contents of the Blackwood indictment and certain Cook County circuit court records regarding the Rollings case. Resolution of this question requires a comparison of the relevant public documents and Karl's report referring thereto.

The Blackwood indictment attached to the motion to dismiss indicated the following. On December 14, 1983, Blackwood was indicted by a Federal grand jury in the United States District Court for the Northern District of Illinois. It charged Blackwood with racketeering and extortion in violation of the United States Criminal Code. The indictment alleged that beginning at least as early as December 1981, Blackwood, a Chicago police department police officer, "knowingly conduct[ed] and participate[d] in *** a pattern of racketeering activity *** consisting of multiple acts involving bribery in violation of [the Illinois Criminal Code]."

The indictment further charged that "said acts involving bribery [were] payments to *** Blackwood from *** [an undercover FBI agent] in relation to the disposition of Circuit Court cases, as listed below." As pertinent here, the indictment listed the following case:

| CIRCUIT COURT CASE NAME (CHARGE, NO., BRANCH) | DATE OF ALLEGED UNDERLYING OCCURRENCE RESULTING IN CHARGE | DATE CIRCUIT COURT CASE RESOLVED (RESULT) | AMOUNT RECEIVED | DATE PAID |
|---|---|---|---|---|
| 2. People v. Kenneth Rollings (Battery, 81—1—345972, Branch 29) | 11/17/81 | 12/29/81 (Not Guilty) | $500 | 12/29/81 |

The indictment also charged Blackwood with extortion for each of the acts of alleged bribery enumerated in the indictment.

In his affidavit, Karl stated that he obtained a copy of the Black-

wood indictment from the United States Attorney's Office, "read it in its entirety shortly after it was issued and assigned a researcher *** to obtain additional information on the cases listed in the indictment, and for which Blackwood allegedly received payments." He stated that "[i]n particular, [he] wanted to find out which judges were on the bench the day each of the cases listed in the indictment was resolved." Karl stated that his research "told [him] that [Berkos] was the judge sitting on the bench at Branch 29 on the day that the case of *People v. Kenneth Rollings* was finally resolved, December 29, 1981. This date corresponded to the disposition date for the *Rollings* case indicated in the Blackwood indictment." Karl attached a copy of the court assignment sheet for December 29, 1981, as an exhibit to his affidavit.

Karl stated in his affidavit that "[i]n preparing the material pertaining to Judge Berkos in the news story in question, [he] relied only upon the information contained in the indictment of Ira Blackwood, the information concerning the courtroom assignments on December 29, 1981, relating to the case of *People v. Kenneth Rollings*, and [his] conversations with Judge Berkos, all of which [he] considered to be reliable." Karl also stated that the "broadcast in question [was] based on what [he] believe[d] to be the truth about the Blackwood indictment and the incidents underlying it."

The affidavit of the NBC research associate was substantially similar in pertinent part to that of Karl, stating that the research associate "relied only upon the information contained in the court records" and "had heard *** of [Berkos], but *** had formed no opinions or preconceptions about him or his performance as a judge."

■■ ■ The Illinois common law privilege of fair and accurate report of public records is an exception to the general rule that a person who republishes a defamatory *per se* remark about the plaintiff is as liable for the defamation as the individual who initially made the false, defamatory *per se* statement about the plaintiff. (*Lorillard v. Field Enterprises, Inc.* (1965), 65 Ill. App. 2d 65, 213 N.E.2d 1; *Cobbs v. The Chicago Defender* (1941), 308 Ill. App. 55, 31 N.E.2d 323; see also *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 168, 419 N.E.2d 350.) Thus, under the privilege, a news entity can restate defamatory statements made about the plaintiff by another person in the context of public records or proceedings. (*Catalano v. Pechous* (1980), 83 Ill. 2d 146; *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837; *Lulay v. Peoria Journal-Star, Inc.* (1966), 34 Ill. 2d 112, 214 N.E.2d 746; *Pape v. Time, Inc.* (7th Cir. 1963), 318 F.2d 652.) For the privilege to apply, the news media is ob-

ligated to summarize the defamatory matter in a manner that is fair and accurate. See, *e.g., Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837; *Gawel v. Chicago American Publishing Co.* (1971), 1 Ill. App. 3d 481, 274 N.E.2d 628; *Lotrich v. Life Printing & Publishing Co.* (1969), 117 Ill. App. 2d 89, 253 N.E.2d 899; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516; *Wilson v. United Press Association* (1951), 343 Ill. App. 238, 89 N.E.2d 391; *Cook v. East Shore Newspapers, Inc.* (1945), 327 Ill. App. 559, 64 N.E.2d 751.

■■■ However, in order to properly invoke the privilege, it is a necessary predicate that the media's defamatory statement about the plaintiff be found in the public record or proceeding to which the privilege is sought to be attached; if the defamatory matter does not appear in those public records or proceedings, the privilege of fair and accurate report of public records does not apply to the media's defamatory statements about the plaintiff. (See, *e.g., Cook v. East Shore Newspapers, Inc.* (1945), 327 Ill. App. 559, 64 N.E.2d 751; *Dameron v. Washington Magazine, Inc.* (D.C. Cir. 1985), 779 F.2d 736; see generally Restatement (Second) of Torts secs. 611, 619 (1977).) We are unable to conclude that Karl's references to Berkos, in their overall context, fall within the scope of the fair report privilege. Karl's allegedly defamatory imputation of bribery to Berkos is not found in any of the documents attached to the motion to dismiss of NBC and Karl.

The Blackwood indictment does not accuse Berkos of any criminal activity in his disposition of the Rollings case; in fact, the indictment does not refer to Berkos at all. Similarly, Cook County circuit court records indicating that Berkos presided over the Rollings case do not accuse Berkos of any criminal wrongdoing in his disposition of the Rollings case.

None of the official documents or records upon which NBC and Karl rely accuse Berkos of having accepted a bribe from Blackwood to influence Berkos' disposition of the Rollings case, nor do they state that Federal authorities would seek Berkos' indictment as one of the judges "involved" in "judicial corruption" prosecuted pursuant to Operation Greylord for this reason. Compare, *e.g., O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 491 N.E.2d 1212.

The circumstance that the Blackwood indictment derived from Federal investigation into "judges" "involved" in "judicial corruption" in "Operation Greylord" was a circumstance supplied by NBC and Karl, and not from the face of the Blackwood indictment itself or circuit court records referred to in the Blackwood indictment. The Blackwood indictment appears to allege essentially that Blackwood

agreed to attempt to influence disposition of the criminal cases enumerated in the indictment, in exchange for the alleged bribe from an undercover FBI agent. However, the indictment does not charge that Blackwood executed this agreement by, in turn, bribing any of the judges who presided over those criminal cases with respect to which Blackwood was allegedly bribed. The causal link between the FBI agent's alleged bribe of Blackwood and Blackwood's bribe of a circuit court judge was supplied by NBC and Karl, and not by any public record, document, or proceeding referred to in Karl's broadcast at issue here.

As Karl himself stated in his affidavit, the "broadcast in question [was] based on what [he] believe[d] to be the truth about the Blackwood indictment *and the incidents underlying it.*" (Emphasis added.) Karl's allegedly false and defamatory accusation of or criminal imputation to Berkos was "based only on an inference drawn by the speaker [here, NBC and Karl]." (*Catalano v. Pechous* (1980), 83 Ill. 2d 146, 159, 419 N.E.2d 350, 360; see also 83 Ill. 2d 146, 166, 419 N.E.2d 350.) The common law fair report privilege does not attach to Karl's utterance and publication of this inference.

Parenthetically, we note that the question of whether the common law fair report privilege can be forfeited upon a showing that the defendant acted either with common law "express malice" or constitutional law "actual malice," where the news media has falsely defamed a public official, a public figure, or a private figure with respect to a matter of "public concern," is apparently unsettled because of conflicting Illinois precedent. (See, *e.g., Reed v. Northwestern Publishing Co.* (1987), 155 Ill. App. 3d 796; *O'Donnell v. Field Enterprises, Inc.* (1986), 145 Ill. App. 3d 1032, 491 N.E.2d 1212; *Reed v. Northwestern Publishing Co.* (1984), 129 Ill. App. 3d 133, 471 N.E.2d 1071; *Brown & Williamson Tobacco Corp. v. Jacobsen* (7th Cir. 1983), 713 F.2d 262; Restatement (Second of Torts sec. 611 (1977); W. Prosser & W. Keeton, Prosser & Keeton on Torts sec. 115 (5th ed. 1984); see also *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 419 N.E.2d 350; *Coursey v. Greater Niles Township Publishing Corp.* (1968), 40 Ill. 2d 257, 239 N.E.2d 837; *cf. Time, Inc. v. Pape* (1971), 401 U.S. 279, 28 L. Ed. 2d 45, 91 S. Ct. 633; *Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 789, 89 L. Ed. 2d 783, 801, 106 S. Ct. 1558, 1570 (Stevens, J., dissenting); *Davis v. Keystone Printing Service, Inc.* (1987), 155 Ill. App. 3d 309, 507 N.E.2d 1358; *Nagib v. News-Sun* (1978), 64 Ill. App. 3d 752, 381 N.E.2d 1014; *Colucci v. Chicago Crime Commission* (1975), 31 Ill. App. 3d 802, 334 N.E.2d 461; *Gertz v. Robert Welch, Inc.* (7th Cir. 1982), 680 F.2d 527; see gen-

494

erally, *e.g.*, Smolla, *Let the Author Beware: The Rejuvenation of the American Law of Libel*, 132 U. Pa. L. Rev. 1 (1983); Note, *Reports upon Public Proceedings and Documents: Absolutely Protected by Constitutional Privilege*, 1985 U. Ill. L. Rev. 1059.) In view of our disposition, we need not and do not address the question.

SUBSTANTIAL TRUTH

■■ NBC and Karl argue that Berkos' libel claim was properly dismissed on the theory that their broadcast was substantially true.

We question whether NBC and Karl are properly burdened with the affirmative defense of showing the "substantial truth" of their allegedly defamatory remarks about Berkos in the instant cause. In our opinion, the better view would be that Berkos must plead and prove the falsity of the allegedly defamatory statements made about him by NBC and Karl. See, *e.g.*, *Catalano v. Pechous* (1980), 83 Ill. 2d 146, 415 N.E.2d 350; *Farnsworth v. Tribune Co.* (1969), 43 Ill. 2d 286, 253 N.E.2d 408; *cf. Philadelphia Newspapers, Inc. v. Hepps* (1986), 475 U.S. 767, 775, 89 L. Ed. 2d 783, 792, 106 S. Ct. 1558, 1563.

Assuming *arguendo* that substantial truth is an appropriate affirmative defense imposed upon NBC and Karl in the instant cause, we note that the defense assumes the defamatory nature of the defendant's statement, and seeks to establish that the *defamation* was, in substance, true. (See, *e.g.*, *Delis v. Sepsis* (1972), 9 Ill. App. 3d 217, 292 N.E.2d 138; *Mitchell v. Peoria Journal-Star, Inc.* (1966), 76 Ill. App. 2d 154, 221 N.E.2d 516; *Vachet v. Central Newspapers, Inc.* (7th Cir. 1987), 816 F.2d 313; see generally Restatement (Second) of Torts sec. 681A (1977).) In order to prevail on this defense, NBC and Karl would be required to show that their allegedly *defamatory* remarks about Berkos were substantially true. However, NBC and Karl do not contend, suggest, or imply that Berkos may indeed have "accepted a bribe" from Blackwood "to fix" the Rollings case, nor do they assert that Berkos was under Federal indictment, investigation, or suspicion as a "corrupt judge" in Operation Greylord for this reason. As a result, we conclude that the assumed affirmative defense of substantial truth was not shown as a matter of law in the affidavits of Karl and the NBC research associate, and that Berkos' libel claim should not have been dismissed on this ground.

For the reasons stated, the trial court's dismissal of Berkos' libel claim is reversed, and the matter remanded for further proceedings consistent herewith.

## II. INVASION OF PRIVACY

 █ Berkos argues that the news broadcast by NBC and Karl amounted to an invasion of his privacy. He urges that the publication of the broadcast constituted tortious conduct that appropriated his name and likeness for the commercial advantage of NBC and Karl, and that unreasonably placed him in a false light.

We determine that the complained-of broadcast was not actionable as the commercial appropriation of Berkos' name or likeness. A commercial appropriation claim cannot be stated where a plaintiff's name or likeness has been used as part of a "vehicle of information," such as the news media. (See, e.g., *Leopold v. Levin* (1970), 45 Ill. 2d 434, 259 N.E.2d 250; *Adreani v. Hansen* (1980), 80 Ill. App. 3d 726, 400 N.E.2d 679; *Annerino v. Dell Publishing Co.* (1958), 17 Ill. App. 2d 205, 149 N.E.2d 761.) The use by NBC and Karl of Berkos' photograph in the broadcast in question was a part of the communication of news information, and is clearly distinguishable from the commercial use made of the plaintiff's likeness in *Eick v. Perk Dog Food Co.* (1952), 347 Ill. App. 293, 106 N.E.2d 742, where the defendants used the plaintiff's photograph in a dog food advertisement. As stated in the Restatement (Second) of Torts sec. 652C, comment *d* (1977):

> "The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; nor is the value of his likeness appropriated when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity. No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation. It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial or other values associated with the name or the likeness that the right of privacy is invaded. The fact that the defendant is engaged in the business of publication, for example of a newspaper [or a network news program], out of which he makes or seeks to make a profit, is not enough to make the incidental publication a commercial use of the name or likeness. Thus a newspaper [or a network news station] although it is not a philanthropic institution, does not become liable under the rule *** to every person whose name or likeness it publishes."

This result is not altered by Berkos' claim that he could amend his pleading to allege that NBC utilized "teasers" or "hype" to increase

viewer share of the 10 p.m. broadcast. Even were we to assume that NBC and Karl did indeed obtain a certain commercial advantage by such conduct, the so-called "teasers" pertained to news reports. As such, no commercial appropriation of name or likeness occurred, and the trial court properly dismissed Berkos' pleading to the extent that it purported to allege such a cause of action.

However, we further determine that Berkos' pleading properly stated a claim for the placement of Berkos in a false light. In order to state such a claim, a complaint must allege facts tending to show the following:

"One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if

(a) the false light in which the other was placed would be highly offensive to a reasonable person, and

(b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts sec. 652E (1977).

In our view Berkos' complaint contains sufficient factual allegations to satisfy the applicable standard. Furthermore, as stated above, we conclude that the broadcast's references to Berkos do not fall within the scope of the common law fair report privilege. As a result, we reverse the trial court's dismissal of Berkos' false-light claim and remand the matter for further proceedings. See generally Restatement (Second) of Torts sec. 652E, comment d (1977); cf. McGrew v. Heinold Commodities, Inc. (1986), 147 Ill. App. 3d 104, 497 N.E.2d 424.

Although NBC and Karl caution that no Illinois decision has recognized the tort of false light as a cause of action, they advance no other ground to refuse recognition of such a claim in this jurisdiction. Accordingly, we decline to affirm the trial court's dismissal of Berkos' false-light claim on this basis. See Douglas v. Hustler Magazine, Inc. (7th Cir. 1985), 769 F.2d 1128, cert. denied (1986), 475 U.S. 1094, 89 L. Ed. 2d 892, 106 S. Ct. 1489; but see Melvin v. Burling (1986), 141 Ill. App. 3d 786, 490 N.E.2d 1011.

III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Berkos maintains that the NBC broadcast of Karl's report constituted the intentional infliction of emotional distress upon Berkos. In order to state such a claim, a pleading must allege facts demonstrating that (1) the defendant's conduct is so extreme and out-

rageous as to exceed all possible bounds of decency; (2) the emotional distress inflicted is so severe that no reasonable person could be expected to endure it; and (3) the defendant intended to inflict this distress or was substantially certain the conduct would result in severe distress. (*Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 89-90, 360 N.E.2d 765.) Based upon our review of Berkos' complaint, we conclude that the allegations therein are insufficient to satisfy the criteria enumerated in *Public Finance Corp.* As a result, the trial court properly dismissed Berkos' emotional distress claim for failure to state a cause of action. See, *e.g., Harris v. First Federal Savings & Loan Association* (1984), 129 Ill. App. 3d 978, 980-81, 473 N.E.2d 457; *Witkowski v. St. Anne's Hospital of Chicago, Inc.* (1983), 113 Ill. App. 3d 745, 752-54, 447 N.E.2d 1016; *McCaskill v. Barr* (1980), 92 Ill. App. 3d 157, 414 N.E.2d 1327; *cf. Falwell v. Flynt* (4th Cir. 1986), 797 F.2d 1270, *cert. granted* (1987), 480 U.S. ___, 94 L. Ed. 2d 788, 107 S. Ct. 1601.

For the reasons stated, the orders of the trial court are affirmed with respect to Berkos' commercial appropriation and intentional infliction of emotional distress claims; the trial court's orders dismissing Berkos' libel and false-light claims are reversed; and the cause is remanded for further proceedings consistent herewith.

Affirmed in part; reversed in part and remanded.

LINN, J., concurs.

JUSTICE JIGANTI, dissenting in part and concurring in part:
I respectfully dissent. I would affirm the dismissal of the libel and false-light claims.

In *Chapski v. Copley Press* (1982), 92 Ill. 2d 344, 352, 442 N.E.2d 195, the court set forth the applicable standard and stated:

"We therefore hold that a written or oral statement is to be considered in context, with the words and the implications therefrom given their natural and obvious meaning; if, as so construed, the statement may reasonably be innocently interpreted * * * it cannot be actionable *per se."*

The plaintiff alleges in his complaint that the program presented by Peter Karl "portray[s] plaintiff as a person who participated in the acceptance of a bribe to influence the disposition of a case which had been heard by plaintiff." I disagree. Rather, I believe the dominant feature in this case is that the facts which may have placed a taint on Berkos emanated, not from Peter Karl's newscast, but instead, from

the indictment returned in the United States District Court against Chicago police officer Ira Blackwood.

The indictment charges that Blackwood engaged in racketeering by "multiple acts involving bribery." Further, the indictment charges that David V. Ries, an undercover FBI agent, gave Blackwood $4,400 to influence the disposition of 10 cases. The indictment names each case, the charge, the ultimate disposition of the case, the amount of money received by Blackwood from Ries and the date upon which it was paid. With regard to the context in which the indictment was read, the newscast did nothing more than explain the circumstances surrounding the indictment.

Specifically, the broadcast began by stating that the report stems from the Greylord investigation into judicial corruption in the circuit court of Cook County. The Greylord investigation is a notorious fact known to everyone in the entire community. In the report the term "fix" is used colloquially to refer to bribery. Additionally, Karl named the judges who were involved in the disposition of the 10 cases identified in the indictment, information which was received from an investigator who checked the public records. In contrast to the majority's opinion that these facts and the manner in which they were presented could not be innocently construed, it is evident to me that these facts simply emanate from the indictment against Blackwood and the surrounding circumstances, virtually all of which came from the indictment, and not from the newscast. Consequently, I believe the newscast can reasonably be innocently interpreted as a report of the charges against Blackwood which was properly placed in its context.

Moreover, although Karl had no duty to exonerate any of the judges who presided over the 10 cases at issue, the judges, including Berkos, were called and given an opportunity to comment. Karl further acted responsibly by specifically noting that there were no charges of wrongdoing against any of those judges.

For similar reasons, I would affirm the dismissal of any claim that the broadcast placed Berkos in a false light.