(No. 45106.

JOHNNIE MAY TURNER, Appellee, v. BOARD OF EDUCATION, NORTH CHICAGO COMMUNITY HIGH SCHOOL DISTRICT 123, Appellant.

*Opinion filed March 20, 1973.*

ANCEL, GLINK, DIAMOND & MURPHY, of Chicago (LOUIS ANCEL and JOSEPH A. MURPHY, of counsel), for appellant.

JEWEL N. KLEIN, of Chicago (ANDREW J. LEAHY and MARY LEE LEAHY, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

The circuit court of Lake County denied a petition for a writ of *mandamus* to order the defendant, the Board of Education of North Chicago Community High School District 123, to permit Johnnie Mae Turner to attend North Chicago High School on a tuition-free basis. The petition in behalf of the plaintiff was filed by her brother, Percy Turner, who lives with his wife and two infant children in North Chicago, which is in the defendant school district. Four days before Turner filed the petition for *mandamus* he had been appointed the guardian of the plaintiff by the circuit court of Lake County.

Following the denial of the petition for *mandamus* the plaintiff first appealed to this court claiming that constitutional questions were involved. We, however, allowed the defendant's motion to transfer the appeal to the appellate court observing: "There are no substantial constitutional questions involved, but only a question of fact as to the student's residence." The judgment of the circuit court was reversed by the appellate court and the cause was remanded with directions to issue the writ of *mandamus*. (3 Ill. App. 3d 932.) We granted the defendant's petition for leave to appeal.

The record shows that the plaintiff, who was 15 years old when the petition for *mandamus* was filed, had lived

with her parents in Chicago while attending a Chicago high school during her freshman year. Late in September of 1970, after the academic year had begun, she moved to the North Chicago home of her brother, Percy Turner. On October 1, 1970, the assistant superintendent of the North Chicago High School advised the plaintiff that she was not eligible to attend the high school as a tuition-free student because she was not considered, for school purposes, a resident of the defendant district. Following this notification the plaintiff's mother, Dorothy Turner, on the same day, October 1, 1970, filed a petition in the circuit court of Lake County asking that Percy Turner be appointed the guardian of the person of the plaintiff.

At the hearing on the petition for *mandamus* Dorothy Turner testified that the plaintiff was her sixth and youngest child. She said there had been difficulties in her supervision of Johnnie Mae because Mrs. Turner would leave with her husband for work at about 6:20 in the morning and would not return home until about five in the evening. The plaintiff, the mother testified, would leave for school about 7:30 A.M. and would return at 3:30 in the afternoon. She testified that the plaintiff had spent part of her vacation with her brother Percy and that the plaintiff wanted to live with the brother's family. The plaintiff desired to live there because there would be more adult supervision and she would be able to care for Percy's children and attend the North Chicago High School. Mrs. Turner testified that she knew nothing of the North Chicago school but that the plaintiff and Percy and his wife preferred that the plaintiff attend school in North Chicago. The mother testified that the plaintiff had wanted to begin school in North Chicago in September. Mrs. Turner testified that prior to the plaintiff's moving to North Chicago she had asked Percy if the plaintiff could live with him.

Percy Turner testified that he invited the plaintiff to live with his family because she preferred living there and

had agreed to help to care for his children. There was no agreement as to how long the plaintiff would live with him. When asked whether there was an understanding as to whether the mother would pay room and board for the plaintiff, he said that his mother had told him she would give him "some money every week or so," which he said was agreeable to him.

The plaintiff testified that she sometimes had difficulty communicating with her mother about school matters. Her mother believed she was not studying properly, and she said that her mother was unable to help her with subjects such as new mathematics. She said that her grades in her freshman year had been poor and that her mother had attributed this to the fact that she had no one to assist her with her homework. Percy had said he could help her with her homework. She testified she had spent her spring vacation with Percy, and when she returned home she had told her mother that she would like to live with Percy and attend school in North Chicago.

Lester Harman, the superintendent of the North Chicago High School testified that the North Chicago High School rules and regulations provided that: "Children of non-residents living with relatives in the district are not entitled to free tuition." He testified that the plaintiff was eligible to attend North Chicago High School but not on a tuition-free basis.

The petition filed by the plaintiff's mother requesting that Percy Turner be appointed guardian was admitted into evidence. The petition stated in part: "It is necessary or convenient that a guardian of the person of the minor be appointed in order that said minor be permitted to attend public high school in North Chicago, Illinois." No other reason why a guardian should be appointed was stated in the petition.

We were informed during oral argument that the plaintiff completed the academic year at North Chicago High School as a tuition-paying student. Certain tuition

payments, the amount of which is not clear, were made by her parents. She then returned to her parent's home in Chicago and re-entered the Chicago high school she had attended.

The defendant was under a statutory obligation "[t]o charge non-resident pupils who attend the schools of the district tuition in an amount equal to the per capita cost of maintaining the schools of the district for the preceding school year." Ill. Rev. Stat. 1971, ch. 122, par. 10—20.12a.

While generally the residence of the parents will be considered the residence of their minor child, a minor child, however, may have for school purposes a different residence from that of his parents. (*Dean v. Board of Education, 386 Ill. 156, 157, 159; Ashley v. Board of Education, 275 Ill. 274, 281; Board of Education v. McCaskill, 212 Ill. App. 138, 140; People ex rel. Saxe v. Board of Education, 206 Ill. App. 381, 385.*) Too, it is generally held that a minor child's dwelling in a school district solely for the purpose of attending a public school in the district will not be considered residency in the district for school purposes. (See collected cases in Annot., 83 A.L.R.2d 497, 505-509, 513-526 (1962).) It is clear that this view has been followed in Illinois. *Dean v. Board of Education, 386 Ill. 156; Logsdon v. Jones, 311 Ill. 425, 427; Ashley v. Board of Education, 275 Ill. 274, 279; People ex rel. Saxe v. Board of Education, 206 Ill. App. 381, 383.*

The plaintiff here sought to establish that for purposes of school law her residence was not to be considered the Chicago residence of her parents. The petition for *mandamus* presented to the circuit court "a question of fact as to the student's residence," as we said when we transferred the original appeal in this matter to the appellate court.

It has become axiomatic that we will not disturb a finding of fact made by a trial court unless the finding is

contrary to the manifest weight of the evidence. *Brown v. Zimmerman, 18 Ill.2d 94, 102.*

We do not judge that the trial court erred in denying the petition for a writ of *mandamus.* Considering the evidence presented, including the petition for guardianship which declared that the guardianship by Percy was sought only to permit the plaintiff to attend the North Chicago High School, we do not judge that the determination that the only reason for the plaintiff's moving to North Chicago was to attend school there was contrary to the manifest weight of the evidence.

In considering a resembling question of residence in *Stilwell v. Continental Illinois National Bank and Trust Co., 31 Ill.2d 546, 550,* we said: "Upon this record we find that the trial court's determination that Abner Stilwell was a *bona fide* resident of Arkansas at the time of his divorce was not contrary to the manifest weight of the evidence and should not be disturbed. We therefore conclude that the Arkansas decree was entitled to full faith and credit to the extent that it dissolved the marriage between the parties." We spoke in *Schulenburg v. Signatrol, Inc., 37 Ill.2d 352, 356,* of the foundation for the rule, observing: "Underlying this rule is the recognition that, especially where the testimony is contradictory, the trial judge as the trier of fact is in a position superior to a court of review to observe the conduct of the witnesses while testifying, to determine their credibility, and to weigh the evidence and determine the preponderance thereof. We may not overturn a judgment merely because we might disagree with it or might, had we been the trier of facts, have come to a different conclusion."

For the reasons given, the judgment of the appellate court is reversed, and the circuit court judgment is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*