ROSEMARY McCASKILL, Plaintiff-Appellant, *v.* LILLIAN BARR,
Defendant-Appellee.

Fourth District    No. 16288

Opinion filed December 30, 1980.

GREEN, J., concurring in part and dissenting in part.

Greaves, Lerner & Gadau, of Champaign, for appellant.

Paul G. Foran, of Meyer, Capel, Hirschfeld, Muncy, Jahn & Aldeen, of
Champaign, for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents the rather narrow question of what is required in
order to plead properly the cause of action generally known today as the
tort of outrage. The plaintiff filed an original complaint, and an amended
complaint, attempting to state such a cause of action, and the circuit court
of Champaign County dismissed both on separate motions of the de-
fendant. We hold that while plaintiff's prospects of ultimate success on
the merits are dubious, the dismissal was premature, and we remand.

The factual situation giving rise to the complaint is relatively uncom-
plicated. The parties are mother (defendant) and daughter (plaintiff).
Defendant had been appointed conservator of plaintiff in August 1976. At
that time, plaintiff had in her custody two minor children, and sometime
after the appointment plaintiff took the children to Arkansas and left
them with relatives there. She alleges that placement of the children was
for the purpose of spending the summer months only, although there is no
allegation as to which summer the visit appertained.

Plaintiff's chronology then becomes more inscrutable as set forth in
her amended complaint. She alleges that a petition for her restoration was
filed August 22, 1978, and that it was "subsequently" allowed. A further
allegation follows that defendant on December 14, 1978, executed a
consent in a court in Arkansas by which persons there (presumably those

with whom plaintiff had left the children) became guardians of the persons of the children.

Concerning this Arkansas consent, plaintiff alleges that prior to its execution defendant had been orally instructed by a judge of the circuit court of Champaign County to take all actions possible to return the children to Illinois, and that after its execution defendant stated to the same judge that she had attempted to return the children to Illinois but that their Arkansas custodians would not permit it. Plaintiff further alleges that defendant never informed the court of the existence of the Arkansas consent and that she, herself, knew nothing of it until she went to Arkansas and "attempted to get her children." A copy of the consent and the order of the Arkansas court appointing guardians of the persons is attached to the amended complaint.

Plaintiff's final allegations are that she has been deprived of her children "forever," that this has caused her severe emotional distress which no reasonable person can be expected to endure, that the actions of defendant were done either with intent to inflict such distress on plaintiff, or with a reckless disregard of plaintiff's feelings, and that defendant's execution of the consent was a violation of her legal duty as plaintiff's conservator. Plaintiff demands ordinary and punitive damages.

The supreme court first recognized the tort of intentional infliction of mental suffering, or in its abbreviated form, the tort of outrage, in *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, and following Professor Prosser's nomenclature, designated it as a "new tort." As with all new doctrines in the law, this new tort is still in process of growth, a fact noted by Mr. Justice Dooley's dissent in *Public Finance Corp. v. Davis* (1976), 66 Ill. 2d 85, 360 N.E.2d 765. While the outer perimeters of the action are still to be determined, we note that *Knierim* and subsequent cases have established this much: (1) The conduct of the tortfeasor will be judged objectively and not subjectively, and (2) a line will be drawn between trivial injuries to the psyche and severe mental disturbances. In connection with the latter, the supreme court in *Knierim* stated, "We are confident, however, that the trial judges in this State will not permit litigation to enter the field of trivialities and mere bad manners." 22 Ill. 2d 73, 87, 174 N.E.2d 157.

In order that the trial judge may fulfill his function as required by *Knierim*, it is necessary that the complaint be specific, and detailed beyond what is normally considered permissible in pleading a tort action. It is analogous to an action in fraud wherein specificity is required. "It is well settled that, in alleging fraud, a general averment, however strong in expression, is insufficient, and that the pleadings, both at law and in equity, should point out and state the particular facts and circumstances

relied on as constituting·the fraud." (19 Ill. L. & Prac. *Fraud* §36 (1956).) The time will come when the facts constituting the "new tort" of outrage will have become sufficiently established that trial courts, and appellate courts, may look at an outrage complaint and be able to say with the same certainty which now surrounds the open-intersection collision complaint that it is sufficient to withstand a motion to dismiss. Until that day arrives, the pleader must indulge in what is normally considered poor form, that is, pleading evidence. We note, in passing, that the complaint in *Crown Finance Corp.* was quite detailed.

In addition to the foregoing, a further reason for specific and detailed pleading is that Illinois, unlike some other jurisdictions, does not require physical injury or disability to accompany, or result from, the psychic trauma. (*Knierim*, at 83.) Without any physical manifestation to be objectively observed, it is more important than ever that the trial judge possess sufficient factual data in order to say that the events would lead an ordinarily reasonable person into a state of mental distress.

Turning, then, to the amended complaint in the instant case, we find it deficient in the necessary detail. Plaintiff claims that she was deprived of her children "forever," yet the exhibit (being a copy of the order of the Arkansas court) shows on its face that it does not purport to be an adoption order nor does it in any fashion purport to terminate any parental rights. Plaintiff makes no showing as to any effort on her part to have the order amended or set aside. She alleges only that she went to Arkansas to "get" her children, and was unable to do so.

Moreover, the same exhibit recites that the minor children "* * * are enrolled in the Arkadelphia public schools." Such a recitation raises at least an inference that the purpose of the guardianship was to permit the children to attend the public schools on a tuition-free basis. (Compare *Turner v. Board of Education* (1973), 54 Ill. 2d 68, 294 N.E.2d 264.) Since the petition underlying the Arkansas order is not part of the record, there is no sure way of determining what the particular reason for change in custody of the children was.

It is apparent that details regarding the Arkansas proceeding are essential to plaintiff's case. If plaintiff has petitioned the Arkansas court to set aside its guardianship order and the prayer of that petition has been allowed, plaintiff could no longer be suffering mental distress. On the other hand, if the petition has been denied on its merits it would demonstrate that defendant's actions were appropriate under the circumstances.

Plaintiff's imprecision as to dates is also subject to criticism. It cannot be determined from the amended complaint when her restoration order was entered with relation to the consent to guardianship nor when plaintiff discovered the existence of the guardianship order. These, together

with the date upon which the children were delivered by plaintiff to Arkansas and the circumstances of that placement, will be significant in assessing plaintiff's claim of mental distress.

We also note in the amended complaint an emphasis on defendant's failure to obtain any orders from the Illinois court prior to making the consent in Arkansas. Plaintiff appears, at least by implication, to say that the Arkansas placement would have been proper if it had been preceded by an Illinois order of authorization. It then becomes incumbent on plaintiff to plead how the same conduct can at once be outrageous without a court order and simply routine with an order.

We, therefore, conclude that the trial court was correct in dismissing the amended complaint, but was incorrect in not ordering plaintiff to plead over. The cause is therefore remanded to the circuit court of Champaign County with directions to permit plaintiff to file a second amended complaint in accordance with the views herein expressed. If plaintiff elects not to do so but to stand on her amended complaint which is the subject of this appeal, then the trial court may enter an order of dismissal with prejudice. If plaintiff shall file a second amended complaint, the trial court may then examine it in the light of this opinion to determine whether under *Knierim* only trivialities are involved.

Affirmed and remanded with directions.

CRAVEN, J., concurs.

Mr. JUSTICE GREEN, concurring in part, and dissenting in part:

I concur in the affirmance of the dismissal of the amended complaint. I dissent from the decision to remand to give plaintiff an opportunity to further amend.

As stated by the majority, the theory of the complaint is that the conduct of defendant-mother in performing her custodial duties over her grandchildren committed the tort of outrage against her plaintiff-daughter, the children's mother, because she acted either: (1) with intent to inflict unbearably severe emotional distress upon the daughter; or (2) *acted with a reckless disregard* for her daughter's feelings, thus causing the daughter unbearable emotional distress. Because of the sensitive inter-family relations involved, I believe that courts should be most cautious in extending that tort to a situation of this nature. One placed in the position attributed to the defendant-mother here may feel compelled in the best interests of the children to take steps which are most likely to cause unendurable emotional distress to one in the situation attributed to the plaintiff-daughter. I am concerned with a rule that would permit recovery

against the mother if her conduct objectively appeared to have been reckless.

One amendment to the complaint had been made prior to the order appealed. Plaintiff made no request for further amendment and does not now complain that she should have been permitted to do so. I agree that the amended complaint failed to state a cause of action. Because of my reluctance to apply broadly the tort of outrage to conduct between members of a family, I am even more convinced than the majority that plaintiff's ability to state a cause of action upon remand, by being more specific, is most unlikely. We do not usually remand to allow further amendment to a complaint upon which a party has tacitly elected to stand. I would not do so here.