STEVE WELSH *et al.*, Plaintiffs-Appellants, v. COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

First District (4th Division)   No. 1—98—2212

Opinion filed June 17, 1999.

Hunt & Associates, of Chicago (Keith L. Hunt and Katherine A. Rodosky, of counsel), for appellants.

Sidley & Austin (Brian J. Gold, Scott E. Gross, and Melissa E. Lamfalusi, of counsel), and Glenn D. Newman, of Commonwealth Edison Company, both of Chicago, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiffs, Steve Welsh, Gerald Evans, Lee Danson, Michael Johnson, Mike Yusten, and Kelly Fondrliak, filed the instant action seeking recovery against their employer, Commonwealth Edison Company, on theories of "Retaliatory Demotion," "Retaliatory Constructive Discharge," and "Intentional Infliction of Emotional Distress." Commonwealth Edison moved to dismiss the action pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1996)), alleging that the plaintiffs' complaint failed to

state causes of action upon which relief could be granted. The trial court granted the motion and dismissed the action. The plaintiffs have appealed, and for the reasons that follow, we affirm.

The plaintiffs filed an 18-count complaint against Commonwealth Edison alleging that they were demoted after having made complaints concerning safety issues and statutory violations at Commonwealth Edison's nuclear power station in Zion, Illinois. In their complaint, the plaintiffs allege that they each complained to Commonwealth Edison's management and the Nuclear Regulatory Commission concerning conditions at the Zion facility and that five of them testified before the Nuclear Regulatory Commission in support of their complaints. According to the complaint, each of the plaintiffs was thereafter transferred to another facility and demoted, and each suffered a loss of pay and "a significant deterioration in the terms, conditions, privileges and environment of" his or her employment. Specifically, the complaint alleges that three of the plaintiffs were demoted from the position of nuclear station operator to underground helper, one was demoted from equipment operator to coal handler, another was demoted from equipment attendant to underground helper, and the sixth was demoted from nuclear fuel handler to coal handler. Those demoted to underground handler were assigned "demeaning" and "humiliating" tasks such as manually cleaning manholes "infested with bacteria, human waste, and other disgusting matter" and denied permission to use equipment specifically designed for such purposes. Those assigned to duties as a coal handler allege that they were assigned unspecified "demeaning" and "humiliating" tasks. The plaintiffs charge that they were reassigned and demoted in retaliation for having complained about conditions and procedures at the Zion facility. The complaint filed in this case sets forth three counts in favor of each plaintiff; one for "Retaliatory Demotion," one for "Retaliatory Constructive Discharge," and one for "Intentional Infliction of Emotional Distress."

Commonwealth Edison filed a section 2—615 motion to dismiss all counts of the plaintiffs' complaint. In its motion, Commonwealth Edison argued, *inter alia*, that Illinois does not recognize causes of action for retaliatory demotion or constructive retaliatory discharge. It further argued that, as to the claims for intentional infliction of emotional distress, the plaintiffs had failed to plead any facts in support of the conclusion that its actions were "extreme and outrageous" or that its alleged conduct caused them to suffer "severe emotional distress." The trial court granted the motion, thereby dismissing all of the plaintiffs' claims, and this appeal followed.

■ As the complaint in issue was dismissed in response to a sec-

tion 2—615 motion, the only question before this court is whether the dismissed counts state causes of action. *Burdinie v. Village of Glendale Heights*, 139 Ill. 2d 501, 505, 565 N.E.2d 654 (1990); *Janes v. First Federal Savings & Loan Ass'n*, 57 Ill. 2d 398, 406, 312 N.E.2d 605 (1974). The issue is one of law, and our review is *de novo*. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

In reviewing a dismissal under section 2—615 of the Code, we must take all well-pleaded facts in the complaint as true and draw all reasonable inferences from those facts that are favorable to the pleader. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47, 566 N.E.2d 1365 (1991). However, we will not take conclusions of law or fact contained within the challenged pleading as true unless they are supported by specific factual allegations. *Ziemba*, 142 Ill. 2d at 47. A cause of action should not be dismissed on the pleadings unless it is apparent that no set of facts can be proven which would entitle the plaintiff to recover. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 488, 639 N.E.2d 1282 (1994).

■As a general rule, Illinois follows the common law doctrine that at-will employment is terminable at any time for any or no cause. *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 128-30, 421 N.E.2d 876 (1981). In 1978, our supreme court recognized a cause of action for retaliatory discharge and thereby created a limited exception to an employer's ability to freely discharge an at-will employee. See *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). In order to state a valid claim for retaliatory discharge, a plaintiff must allege that he or she was discharged from employment in retaliation for his or her activities and that the discharge violates a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529, 519 N.E.2d 909 (1988).

As the plaintiffs correctly argue, the protection of public policy is the foundation of a retaliatory discharge claim. *Palmateer*, 85 Ill. 2d at 133. Although not subject to precise definition, "public policy concerns what is right and just and what affects the citizens of the State collectively." *Palmateer*, 85 Ill. 2d at 130. Our supreme court has already held that the "protection of the lives and property of citizens from the hazards of radioactive material is as important and fundamental as protecting them from crimes of violence, and *** Congress has effectively declared a clearly mandated public policy to that effect." *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 511, 485 N.E.2d 372 (1985).

The plaintiffs' complaint alleges that they were transferred and demoted in retaliation for having registered complaints concerning issues of safety at the Zion facility and Commonwealth Edison's pos-

sible violations of the Atomic Energy Act of 1954 (42 U.S.C. § 2011 *et seq*. (1994)) and regulations issued by the Nuclear Regulatory Commission. Consequently, we have little difficulty in finding that, if these allegations are true, Commonwealth Edison's retaliation against the plaintiffs evinces behavior which is inconsistent with the state's public policy. Nevertheless, the question remains as to whether, in the absence of an actual discharge, the plaintiffs have stated cognizable causes of action.

■ The plaintiffs candidly concede that our supreme court refused to recognize the tort of retaliatory demotion in *Zimmerman v. Buchheit of Sparta, Inc.*, 164 Ill. 2d 29, 645 N.E.2d 877 (1994), but argue that *Zimmerman*, a plurality opinion, is readily distinguishable from the facts present in this case. They also point out that four of the justices participating in the *Zimmerman* decision found the recognition of a cause of action for retaliatory demotion to be the logical extension of the tort of retaliatory discharge. *Zimmerman*, 164 Ill. 2d at 46 (Bilandic, C.J., concurring, joined by Heiple, J.); 164 Ill. 2d at 52 (Harrison, J., dissenting, joined by Nickels, J.).

In *Zimmerman*, the plurality noted that "the element of discharge in violation of a clear public policy is essential to the tort created \*\*\* in *Kelsay*" and declined the "plaintiff's request to extrapolate from the rationale of *Kelsay* a cause of action predicated on retaliatory demotion." *Zimmerman*, 164 Ill. 2d at 38, 39. In a separate concurring opinion, two additional justices also declined to recognize a cause of action for retaliatory demotion, not because they believed that such an action would be inconsistent with the rationale adopted in *Kelsay*, but because they were of a belief that the recognition of a cause of action for retaliatory discharge was in itself an "unwarranted intrusion into the legislative arena". *Zimmerman*, 164 Ill. 2d at 46 (Bilandic, C.J., concurring, joined by Heiple, J.).

The logic of the proposition that the recognition of a cause of action for retaliatory demotion is the necessary extension of the tort of retaliatory discharge is difficult to deny. As the concurrence in *Zimmerman* observes:

> "[I]f we do not have a cause of action for retaliatory demotion, we, in effect, will not have a cause of action for retaliatory discharge. We have invited those who wish to discharge in retaliation to simply demote in retaliation, and thereby escape the effect of the law." *Zimmerman*, 164 Ill. 2d at 46 (Bilandic, C.J., concurring, joined by Heiple, J.).

The fact remains, however, that five justices of our supreme court in *Zimmerman* refused to recognize a cause of action for retaliatory demotion. Nevertheless, the plaintiffs urge us to reverse the dismissal

of their retaliatory demotion claims, asserting that *"Zimmerman* was wrongly decided." As we lack the authority to overrule or modify the supreme court's decisions (*Rickey v. Chicago Transit Authority,* 98 Ill. 2d 546, 551, 457 N.E.2d 1 (1983)), we must decline. The trial court's dismissal of the plaintiffs' retaliatory demotion claims is, therefore, affirmed.

■ Next, we address the dismissal of the plaintiffs' claims for "Retaliatory Constructive Discharge." We begin with the observation that the complaint in this case fails to allege that Commonwealth Edison terminated the employment of any of the plaintiffs. The plaintiffs seem to premise these counts on the theory that their demotion and placement in new jobs at different locations with different duties, obligations, and benefits constitutes a discharge. We disagree.

Discharge in an employment context is commonly understood to mean the release, dismissal, or termination of an employee. Webster's Third New International Dictionary 644 (1993); Black's Law Dictionary 463 (6th ed. 1990). The plaintiffs' constructive retaliatory discharge claims are nothing more than an attempt to recast their demotion and reassignment as a discharge. Simply put, the plaintiffs have not alleged that their employment with Commonwealth Edison was terminated and, as such, they have failed to allege that they were discharged, either actually or constructively.

Aside from our semantic analysis, there is ample decisional authority supporting the dismissal of the plaintiffs' constructive retaliatory discharge claims. To date, our supreme court has not expanded the tort of retaliatory discharge to encompass any behavior other than actual termination of employment. See *Hartlein v. Illinois Power Co.,* 151 Ill. 2d 142, 163, 601 N.E.2d 720 (1992); *Hinthorn,* 119 Ill. 2d at 530-31. This court has rejected claims based on an employer's retaliatory actions short of actual discharge. *Melton v. Central Illinois Public Service Co.,* 220 Ill. App. 3d 1052, 1056-57, 581 N.E.2d 423 (1991). Specifically, we have found that constructive discharge is not an actionable concept. *Grey v. First National Bank,* 169 Ill. App. 3d 936, 940-43, 523 N.E.2d 1138 (1988), cited approvingly in *Hartlein,* 151 Ill. 2d at 163; *Scheller v. Health Care Service Corp.,* 138 Ill. App. 3d 219, 223-25, 485 N.E.2d 26 (1985). In light of our supreme court's admonition that it "does not 'strongly support' the expansion of the tort [of retaliatory discharge]" (*Barr v. Kelso-Burnett Co.,* 106 Ill. 2d 520, 525, 478 N.E.2d 1354 (1985)), we find no compelling reason to deviate from our holdings in *Grey* and *Scheller.* Consequently, we affirm the dismissal of the plaintiffs' constructive retaliatory discharge claims.

■ The third category of claims asserted by the plaintiffs and dismissed by the trial court were those for intentional infliction of

emotional distress. To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege that: (1) the defendant's conduct was extreme and outrageous; (2) the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so; and (3) the defendant's conduct actually caused severe emotional distress. *McGrath v. Fahey*, 126 Ill. 2d 78, 86, 533 N.E.2d 806 (1988). In its motion to dismiss, Commonwealth Edison asserted that the facts alleged in the plaintiffs' complaint are insufficient to satisfy the first and third elements of the tort.

"Whether conduct is extreme and outrageous is judged on an objective standard." *Doe v. Calumet City*, 161 Ill. 2d 374, 392, 641 N.E.2d 498 (1994). Liability does not, however, extend to "mere insults, indignities, threats, annoyances, petty oppressions or trivialities." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90, 360 N.E.2d 765 (1976). Liability only attaches in circumstances where the defendant's conduct is " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency ***.' " *Public Finance Corp.*, 66 Ill. 2d at 90, quoting Restatement (Second) of Torts, § 46, Comment *d* (1965). In circumstances involving the abuse of a position of power, the extreme and outrageous nature of conduct may arise not so much from what is done as from the defendant's actual or apparent ability to damage the plaintiff's interests by his exercise of power or authority. *Doe*, 161 Ill. 2d at 392-95; *Milton v. Illinois Bell Telephone Co.*, 101 Ill. App. 3d 75, 79, 427 N.E.2d 829 (1981).

■ According to the plaintiffs' complaint, they were demoted, transferred, forced to perform "demeaning" and "humiliating" tasks, harassed, intimidated, and threatened with termination, all in retaliation for having voiced safety concerns or in an effort to deter them from making complaints to the Nuclear Regulatory Commission. If the plaintiffs' allegations are true, Commonwealth Edison's retaliatory conduct may well have been in violation of federal statute (see 42 U.S.C. § 5851 (1994)) and could easily be found to be an abuse of power. However, in the absence of conduct calculated to coerce an employee to do something illegal, courts have generally declined to find an employer's retaliatory conduct sufficiently extreme and outrageous as to give rise to an action for intentional infliction of emotional distress. This reluctance seems to be grounded in a fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action. See *Miller v. Equitable Life Assurance Society*, 181 Ill. App. 3d 954, 957-58, 537 N.E.2d 887 (1989); *Harris v. First Federal Savings & Loan Ass'n*, 129 Ill. App. 3d 978, 981, 473 N.E.2d 457, 459 (1984).

Although the retaliation and indignities to which the plaintiffs allege they were subjected are wholly lacking in social utility, we are unable to conclude that Commonwealth Edison's alleged conduct was of such an outrageous character that no reasonable person could be expected to endure it. Even assuming for the sake of further analysis that Commonwealth Edison's conduct could be termed outrageous, we would still affirm the dismissal of the plaintiffs' claims for intentional infliction of emotional distress.

Infliction of emotional distress alone is not sufficient to give rise to a cause of action. As our supreme court held in *Public Finance Corp.*, 66 Ill. 2d at 90:

> "The emotional distress must be *severe*. Although fright, horror, grief, shame, humiliation, worry, etc. may fall within the ambit of the term 'emotional distress,' these mental conditions alone are not actionable. 'The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.' Comment j. See also Prosser, Law of Torts sec. 12, at 54 (4th ed. 1971)." (Emphasis in original.)

It is the degree of emotional distress actually suffered by a plaintiff which separates the actionable from the nonactionable.

Illinois is a fact-pleading jurisdiction. Although "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim *** which he or she is called upon to meet" (735 ILCS 5/2—612(b) (West 1996)), a plaintiff must still allege facts essential to the cause of action under which recovery is sought. A pleading that merely paraphrases the elements of a cause of action in conclusory terms is not sufficient. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 423-27, 430 N.E.2d 976 (1981).

In this case, the plaintiffs generally allege that they suffered "anxiety, humiliation," and "extreme and severe emotional distress," but the complaint contains no factual allegations from which the level of severity of the emotional distress could be inferred. They do not allege that they were hospitalized or were required to seek medical care (see *Milton*, 101 Ill. App. 3d at 78), nor do they allege that any of them was afflicted with a physical or mental condition rendering him or her particularly vulnerable to emotional distress (see *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 21-23, 607 N.E.2d 201 (1992); *McGrath*, 126 Ill. 2d at 89-93).

To state an action for intentional infliction of emotional distress, the complaint must be "specific, and detailed beyond what is normally considered permissible in pleading a tort action." *McCaskill v. Barr*, 92 Ill. App. 3d 157, 158, 414 N.E.2d 1327 (1980). A plaintiff must al-

lege some facts which, if true, would support the conclusion that the emotional distress actually suffered as a proximate result of the defendant's conduct was severe. Merely characterizing emotional distress as severe is not sufficient.

For the reasons stated, we affirm the dismissal of the plaintiffs' complaint.

Affirmed.

WOLFSON, J., concurs.

JUSTICE HALL, specially concurring:

I agree with the majority that the dismissal of the plaintiffs' complaint must be affirmed for the reasons stated except on the claim of intentional infliction of emotional distress.

Commonwealth Edison's alleged conduct if taken as true was sufficiently extreme and outrageous to meet the first element of an intentional infliction of emotional distress cause of action. *McGrath v. Fahey*, 126 Ill. 2d at 86. The complaint alleges four plaintiffs were demoted from the positions of nuclear station operators and equipment attendant to the positions of underground helpers and relegated to cleaning manholes containing human waste and bacteria and "other disgusting matter" without the proper equipment. Two other plaintiffs were allegedly demoted from equipment operator and nuclear fuel handler to coal handlers, allegedly doing "humiliating" and "demeaning" tasks. The facts allege that the demotions were in retaliation for the plaintiffs' complaints to management and their complaints and testimony before the Nuclear Regulatory Commission. Plaintiffs also allege they lost pay and were transferred to other facilities.

Conduct is considered outrageous and extreme in nature if a "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " Restatement (Second) of Torts § 46, Comment *d*, at 73 (1965). It is cognizable that if an average member of plaintiffs' and defendant's community were told that an employee had been reduced from a position of nuclear operator to shoveling human feces in retaliation for taking steps to defend the public safety as plaintiffs allege, a reasonable response could well be the word "Outrageous!" *Doe v. Calumet City*, 161 Ill. 2d at 392, 641 N.E.2d at 557, citing Restatement (Second) of Torts § 46, Comment *d*, at 73 (1965).

Even if the defendant's alleged conduct had not been extreme and outrageous *per se*, this court has held the fact that a defendant's conduct was retaliatory and punitive in nature makes that defendant's

conduct extreme and outrageous and satisfies the first element of the intentional infliction of emotional distress claim. *Johnson v. Federal Reserve Bank*, 199 Ill. App. 3d 427, 432, 557 N.E.2d 328 (1990).

The second element required to state a cause of action for intentional infliction of emotional distress is that the defendant either intended to inflict severe emotional distress or knew that there was a high probability that its conduct would do so. The facts as alleged by plaintiff were sufficient to satisfy this element. *McGrath*, 126 Ill. 2d at 86.

However, the plaintiffs fail to meet the third element of this tort, having failed to specifically and factually allege that the defendant's conduct actually caused severe emotional distress. For these reasons, I specially concur with the majority. See *McGrath*, 126 Ill. 2d at 86; *Doe*, 161 Ill. 2d at 396, 641 N.E.2d at 508; *Johnson*, 199 Ill. App. 3d at 430, 433.