# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Schroeder v. RGIS, Inc.*, 2013 IL App (1st) 122483

---

| | |
|---|---|
| Appellate Court Caption | FREDERICK SCHROEDER, Plaintiff-Appellant, v. RGIS, INC., Defendant-Appellee. |
| District & No. | First District, Second Division<br>Docket No. 1-12-2483 |
| Filed | June 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint against his former employer for intentional infliction of emotional distress was preempted and barred by the Illinois Human Rights Act and the exclusivity provision of the Illinois Workers' Compensation Act, notwithstanding plaintiff's contention that the injuries he suffered as a result of remarks made by other employees about his sexual orientation was a tort that did not fall under the scope of either Act, since plaintiff's claim was inextricably linked to the civil rights violation arising from the retaliation he suffered from reporting the discriminatory conduct of other employees and was preempted by the Human Rights Act, and, furthermore, the claim was barred by the Workers' Compensation Act because plaintiff failed to show his "physical-mental" trauma was not compensable under that Act. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-2228; the Hon. Sanjay Tailor, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Law Office of Mitchell A. Kline, of Chicago (Mitchell A. Kline, of counsel), for appellant.

Jackson Lewis LLP, of Chicago (Jody Wilner Moran and Stephanie E.H. Shirley, of counsel), for appellee.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Connors and Simon concurred in the judgment and opinion.

## OPINION

¶ 1     Plaintiff, Frederick Schroeder, brought a claim of intentional infliction of emotional distress against his former employer, defendant RGIS. Defendant filed a combined motion to dismiss, brought pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2010)), arguing, among other reasons, that plaintiff's complaint must be dismissed pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)) because his claim of intentional infliction of emotional distress was preempted and, thus, barred by the Illinois Human Rights Act (Human Rights Act) (775 ILCS 5/8-111(D) (West 2010)) and by the exclusivity provision of the Illinois Workers' Compensation Act (Workers' Compensation Act) (820 ILCS 305/5(a) (West 2010)). Specifically, defendant asserted that plaintiff's complaint must be dismissed, based on the Human Rights Act, because his claim of intentional infliction of emotional distress was inextricably linked with alleged civil rights violations. Defendant argued that plaintiff's claim was barred by the exclusivity provision of the Workers' Compensation Act because his alleged injury was compensable under the Workers' Compensation Act. The circuit court granted defendant's motion to dismiss.

¶ 2     The following issues are before this court: (1) whether plaintiff is able to establish, independent of any duties created by the Human Rights Act, the elements of the tort of intentional infliction of emotional distress; and (2) whether the exclusivity provision of the Workers' Compensation Act bars plaintiff's claims. We hold that the circuit court properly dismissed plaintiff's second amended complaint because his tort claim of intentional infliction of emotional distress is inextricably linked to a civil rights violation. Therefore, plaintiff's claim is preempted and, thus, barred by the Human Rights Act. We further hold that plaintiff's alleged injury is compensable under the Workers' Compensation Act. Therefore, plaintiff's claim is also preempted and, thus, barred by the Workers' Compensation Act. Accordingly, the circuit court properly dismissed plaintiff's second amended complaint.

¶ 3                          JURISDICTION

¶ 4     On July 25, 2012, the circuit court granted defendant's motion to dismiss, with prejudice.

On August 21, 2012, plaintiff timely filed his notice of appeal. Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 5                                                   BACKGROUND

¶ 6        On February 28, 2011, plaintiff filed his initial complaint against defendant alleging a claim for retaliation under section 6-101(A) of the Human Rights Act (775 ILCS 5/6-101(A) (West 2010)), constructive discharge, and negligence. Defendant filed a combined motion to dismiss plaintiff's complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). In its motion, defendant alleged that plaintiff's retaliation claim is time-barred, that Illinois does not recognize an independent cause of action for constructive discharge, and that it owed plaintiff no duty to investigate his complaints in order to sustain a negligence action. Defendant attached to its motion the charge of discrimination that plaintiff filed before the Illinois Department of Human Rights on August 23, 2010. Defendant also attached a copy of the dismissal issued by the Illinois Department of Human Rights, concluding it lacked jurisdiction to pursue the allegations made by plaintiff. The circuit court granted defendant's motion to dismiss, making the following findings: that plaintiff's retaliation claim was time-barred and subject to dismissal pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)); that there was no legal basis for plaintiff's constructive discharge claim and, thus, the claim was subject to dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)); and that plaintiff failed to plead a legally cognizable duty to support his negligence claim, which was subject to dismissal pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)). Although the circuit court dismissed all three counts of plaintiff's complaint, it allowed plaintiff time to replead.

¶ 7        On October 19, 2011, plaintiff filed his amended complaint, which contained a single count alleging intentional infliction of emotional distress. Defendant filed a combined motion to dismiss plaintiff's amended complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). Defendant argued that under section 2-619 of the Code (735 ILCS 5/2-619 (West 2010)), plaintiff's claim was preempted and barred by both the Human Rights Act and the Workers' Compensation Act. Under the section 2-615 component of the motion (735 ILCS 5/2-615 (West 2010)), defendant argued that plaintiff's complaint should be dismissed because plaintiff did not, and could not, plead sufficient facts to support a claim of intentional infliction of emotional distress. Specifically, plaintiff failed to plead that defendant's conduct was extreme and outrageous. The circuit court granted defendant's motion to dismiss the first amended complaint, finding that it was not "convinced" that plaintiff's claim was preempted by the Workers' Compensation Act, but was "convinced the Human Rights Act preempts the claim insofar as it is based on allegations of discrimination based on sexual orientation." The circuit court further found that the complaint was not sufficiently pled to rise to the level of intentional infliction of emotional distress.

¶ 8        On April 13, 2012, plaintiff filed his second amended complaint, which is at issue here. Plaintiff's second amended complaint contained a single count for the intentional infliction

of emotional distress. Plaintiff alleged that he lived in Chicago, Illinois, and worked for defendant, an inventory services business, from July 21, 2008, until February 25, 2010. He counted inventory for clients and he worked at two locations during his time of employment: Chicago, Illinois and Merrillville, Indiana. He alleged that "on or about November 25, 2008," his supervisor, Tonya Kaufman, called him a " 'faggot, flamer and queer.' " On January 7, 2009, in Chicago, plaintiff quit and left work after Kaufman called him a " 'fucking faggot' in the presence of several co-workers." The next day, plaintiff informed Perry Foy, a vice president for defendant, and Steve McNeil, an operations manager for defendant, of Kaufman's actions. Plaintiff agreed to be reinstated to work in another district and was promised that an investigation would be conducted regarding Kaufman's conduct. Kaufman continued to bully and verbally abuse plaintiff, which he again reported to McNeil, on February 12, 2009.

¶ 9        According to plaintiff, on February 15, 2009, during a conference call, McNeil informed defendant's other district managers that plaintiff would be the district manager at Merrillville, Indiana. During the conference call, two managers, Susan Powell and Roger Cisco, stated that the commute to Indiana for plaintiff was "extreme." Plaintiff alleged that McNeil, in response to Powell and Cisco, stated "[e]xactly. If the drive doesn't get rid of him, the jungle from Gary will." Plaintiff alleged that McNeil additionally told the other seven district managers present during the conference call that they were not to communicate with plaintiff and that "any manager caught helping Plaintiff would be disciplined." McNeil further demanded that he be copied on all emails sent to plaintiff. According to plaintiff, Powell stated that during monthly calls, McNeil would repeat that any manager caught helping plaintiff would be disciplined.

¶ 10       Also on February 15, 2009, defendant told plaintiff that a " 'thorough investigation' was in progress" and that he was to report to its Merrillville, Indiana office, a two-hour commute. Plaintiff, as district manager, "was required to drive employees to various contracted inventories, which required drives several times per week that were several hundred miles round-trip." He alleged that he called Louis Marty, an operations manager for defendant, "[o]n a weekly basis," to request assistance, to question policies, to tell him of the exhaustion and excessive driving he endured, and to inform him that the conditions were putting himself and other employees in danger. Plaintiff alleged "these calls were rarely answered." He described his normal work week as such: he would leave home at 5:30 in the morning and arrive at the office at 8 in the morning. Approximately 40 different inventories at different locations would be scheduled. He performed "all of the budgeting, hiring, training and employee development." He alleged that he would drive a van of employees to various jobsites starting at 5 in the morning and "often not finishing *** until 3" in the morning the next day. Plaintiff alleged that it was not uncommon for him to sleep on the office floor 4 days a week and to work 20 hours a day.

¶ 11       Plaintiff alleged that in March of 2009, McNeil told Powell, after she asked him about how plaintiff was doing, that " 'It's not like we sent him to Broadway *** to find a boyfriend, we sent him to Merrillville to get the hell rid of his queer ass.' " Plaintiff further alleged that on April 1, 2009, he called McNeil to report that he was sleeping on his office floor and that the excessive driving was putting both himself and other employees in danger.

According to plaintiff, McNeil told him he was " 'lucky to have a job.' " The next day, Marty informed plaintiff that defendant could no longer afford to have his office floor cleaned. Plaintiff alleged that Marty told him that if he "wanted to sleep on a clean floor, he could clean it himself."

¶ 12     On June 11, 2009, plaintiff spoke with Kim Wood, a member of defendant's human resources department. He called Wood to inform her about his concerns over the safety of his excessive driving schedule. Plaintiff alleged Wood also told him that he "was lucky to have a job." Plaintiff further alleged that he told Marty approximately one time per week "through February 2010, that he was regularly falling asleep on the road, in his office, and in the presence of clients."[1]

¶ 13     Plaintiff alleged that on February 22, 2010, he "felt extremely exhausted." After determining that no investigation regarding his complaints had occurred and that his safety and that of his coworkers "were of no concern to his supervisors," plaintiff sent a resignation letter to Marty. Plaintiff's last day at work was February 25, 2010.

¶ 14     According to plaintiff, Kaufman, McNeil, and Marty's "extreme and outrageous" conduct "arose from their abuse of their management positions, which gave them actual or apparent authority over" him. Defendant was liable for Kaufman's, McNeil's, and Marty's conduct based on *respondeat superior*. Plaintiff alleged that as a direct and proximate result of defendant's actions, he suffered "severe emotional distress." He sought damages in excess of $50,000, as well as costs of the suit. He alleged damages for: physical injury; medical expenses; severe mental anguish; emotional distress; humiliation; loss of income; and pain and suffering.

¶ 15     Defendant filed a combined motion to dismiss plaintiff's second amended complaint pursuant to section 2-619.1 of the Code. 735 ILCS 5/2-619.1 (West 2010). Defendant argued that plaintiff's second amended should be dismissed under section 2-619[2] of the Code (735 ILCS 5/2-619 (West 2010)) because it was preempted and, thus, barred by both the Human Rights Act and the Workers' Compensation Act. Defendant argued that tort claims such as plaintiff's in this case must be brought under the Workers' Compensation Act due to the Act's exclusivity provisions of section 5(a). 820 ILCS 305/5(a) (West 2010). According to defendant, plaintiff's claim could only survive if he could show that his injury was not accidental, that the injury did not arise from his employment, that it was not received during the course of his employment, or that the injury was not compensable under the Workers' Compensation Act, which defendant argued plaintiff cannot do here. Defendant also argued that plaintiff's claim must be brought under the Human Rights Act because his claim was inextricably linked to a civil rights violation. According to defendant, plaintiff failed to allege the elements of his claim without relying on the duties owed under the Human Rights Act.

---

[1]It is not clear from plaintiff's second amended complaint when he started to call Marty about his safety concerns. It is only clear that he called Marty "through February 2010."

[2]Defendant did not specify which subsection of section 2-619 (735 ILCS 5/2-619 (West 2010)) it was bringing its motion under.

Under the section 2-615 component of its motion to dismiss (735 ILCS 5/2-615 (West 2010)), defendant argued that plaintiff's second amended complaint must be dismissed because plaintiff failed to state a claim upon which relief can be granted. Specifically, defendant argued that plaintiff offered only conclusory allegations that its conduct was extreme and outrageous. Defendant requested plaintiff's second amended complaint be dismissed with prejudice.[3]

¶ 16    In response, plaintiff argued that his injury was not compensable under the Workers' Compensation Act because he made no allegations of physical trauma. Rather, his emotional distress was caused by gradual exhaustion based on working in Indiana. He clarified that "his condition was not caused by a sudden severe emotional shock traceable to a definite time and place," and that he never filed a workers' compensation claim. In response to defendant's assertion that his claim is barred by the Human Rights Act and that he failed to sufficiently plead a cause of action, plaintiff argued that he asserted facts establishing the tort of intentional infliction of emotional distress.

¶ 17    In reply, defendant pointed out that plaintiff admitted that his allegations were "nothing more than day-to-day emotional strain and tension of the workplace that occurred over a one-year period" and, therefore, defendant argued that plaintiff cannot allege sufficient facts of extreme and outrageous behavior by defendant to support his cause of action. Defendant also argued that plaintiff failed to show that his claims were not inextricably linked to duties created by the Human Rights Act, asserting that plaintiff's allegations in his second amended complaint are the same as the allegations he made in the time-barred action he previously filed under the Human Rights Act. According to defendant, a review of plaintiff's second amended complaint showed that plaintiff's allegations of discrimination and retaliation based on sexual orientation were inextricably linked to his claim for the intentional infliction of emotional distress. Defendant also pointed out that plaintiff's admission that his injuries were gradual showed that his injuries were compensable as a "non-traumatically induced mental disability" under the Workers' Compensation Act.

¶ 18    At oral argument before the circuit court, defendant characterized plaintiff's allegations as contradictory. Specifically, that plaintiff cannot argue that the Workers' Compensation Act does not bar his claim because his injury of gradual exhaustion over time is not compensable while at the same time alleging that defendant's conduct was extreme and outrageous. Based on this premise, according to defendant, plaintiff cannot allege that defendant's conduct was extreme or outrageous enough to sustain a claim for intentional infliction of emotional distress. Plaintiff agreed that he was arguing that his injury was suffered over a period of time; therefore, it was not compensable under the Workers' Compensation Act. Plaintiff added, however, that there was no permanency to his injury because his exhaustion was temporary. After he quit, he was able to rest. Regarding whether he is able to state a claim for the intentional infliction of emotional distress independent of any duties owed under the Human Rights Act, plaintiff pointed out that defendant's actions, particularly those of its

---

[3]Defendant also argued that plaintiff failed to allege any additional relevant facts from his first amended complaint which the circuit court had previously dismissed.

manager McNeil, showed extreme and outrageous behavior and an abuse of power. Defendant argued that plaintiff would not be able to state a claim for the intentional infliction of emotional distress without the sexual orientation allegations in his complaint.

¶ 19 The circuit court granted the motion to dismiss plaintiff's complaint, with prejudice. The circuit court found that plaintiff's complaint was barred by both the Human Rights Act and the Workers' Compensation Act. The circuit court found that plaintiff's allegations were inextricably linked to a civil rights violation under the Human Rights Act. The circuit court further found that plaintiff's claims were barred by the Workers' Compensation Act because they were compensable under the Workers' Compensation Act. Specifically, the circuit court found that plaintiff's injury fell "within the theory, 'physical mental.' That is, the plaintiff alleges that the defendant worked him so hard and for so long a period of time that he could [not] physically take it anymore," and "as a result of the physical exhaustion, he suffered emotional distress."

¶ 20                                                ANALYSIS

¶ 21 Before this court, plaintiff argues that his cause of action is not barred by the Human Rights Act because he is able to establish the elements of the tort of intentional infliction of emotional distress without relying upon any duty created by the Human Rights Act. To support his argument that defendant acted in an outrageous manner, plaintiff points to the following facts from his second amended complaint: his assignment to the Merrillville, Indiana, office; his long commute, where he would have to leave his home in Chicago at 5 a.m. and arrive at the office at 8 a.m.; defendant's refusal to allow other managers to help plaintiff; a heavy workload, including scheduling approximately 40 inventories at different locations, doing all the training and development, budgeting, hiring, and driving other employees to various work sites; and working 20-hour days that "necessitated *** sleeping on the office floor." Plaintiff further argues that his injury is not compensable under the Workers' Compensation Act.

¶ 22 Defendant responds that plaintiff's complaint is preempted and, thus, barred by the Human Rights Act because his allegations are inextricably linked to his previously filed and dismissed civil rights claim. According to defendant, plaintiff relies upon duties created by the Human Rights Act to sustain his cause of action for the intentional infliction of emotional distress. Defendant characterizes plaintiff's claim as such: plaintiff was sexually harassed, he complained, and then he was subjected to difficult working conditions. Defendant maintains that plaintiff's allegations amount to a viable cause of action for retaliation and sexual orientation harassment under the Human Rights Act, and are not incidental to his claim for intentional infliction of emotional distress. Therefore, defendant asserts that without plaintiff's allegations of sexual harassment and retaliation, plaintiff is only left with allegations of his difficult working conditions, which do not amount to the outrageous conduct necessary to sustain a cause of action for the intentional infliction of emotional distress. Defendant also contends that plaintiff's injuries are compensable under the Workers' Compensation Act.

¶ 23 Plaintiff did not file a reply brief before this court.

¶ 24    We note initially that defendant filed its motion pursuant to section 2-619.1 of the Code, which allows for combined motions to dismiss. 735 ILCS 5/2-619.1 (West 2010). Due to our ultimate conclusion in this case, we need not address defendant's argument, brought pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2010)), that plaintiff failed to state a claim upon which relief can be granted. A motion to dismiss brought pursuant to section 2-619(a)(9) of the Code allows for the involuntary dismissal of a complaint when the "claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2010). When proceeding under section 2-619 of the Code, the legal sufficiency of the complaint is admitted. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 396 (2009). All pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). "Once a defendant satisfies the initial burden of presenting affirmative matter, the burden then shifts to the plaintiff to establish that the defense is 'unfounded or requires the resolution of an essential element of material fact before it is proven.' " *Reilly v. Wyeth*, 377 Ill. App. 3d 20, 36 (2007) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993)). We review the circuit court's determination of a section 2-619 motion to dismiss using the *de novo* standard of review. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

¶ 25    The Human Rights Act provides "a comprehensive scheme of remedies and administrative procedures for redress of civil rights violations." *Veazey v. LaSalle Telecommunications, Inc.*, 334 Ill. App. 3d 926, 933 (2002). The following limitation provision is contained in the Human Rights Act: "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(D) (West 2010). Section 6-101(A) of the Human Rights Act further provides: "[i]t is a civil rights violation for a person, or for two or more persons to conspire, to *** [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment." 775 ILCS 5/6-101(A) (West 2010).

¶ 26    The circuit court, however, is not precluded from exercising jurisdiction over all tort claims that relate factually to a civil rights violation. *Maksimovic v. Tsogalis*, 177 Ill. 2d 511, 517 (1997). Rather, our supreme court has held that "whether the circuit court may exercise jurisdiction over a tort claim depends upon whether the tort claim is inextricably linked to a civil rights violation such that there is no independent basis for the action apart from the Act itself." *Id.* Further, if a plaintiff is able to establish the necessary elements of the alleged tort independent of any duties created by the Human Rights Act, then the common law tort claim is not inextricably linked with a civil rights violation and the circuit court may exercise jurisdiction. *Id.* at 519. The "fundamental nature" of a claim is not altered solely because a plaintiff's complaint frames the issue as that of a common law tort. *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 517-18 (1994).

¶ 27    In order to properly plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege facts to establish: "(1) that the defendant's conduct was extreme and outrageous; (2) that the defendant knew that there was a high probability that his conduct would cause severe emotional distress; and (3) that the conduct in fact caused severe

emotional distress." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 20 (1992). Our supreme court has warned that "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" do not constitute extreme and outrageous conduct. *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 89-90 (1976). "Rather, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas*, 154 Ill. 2d at 21. In determining whether conduct is outrageous and extreme, we use an objective standard based on all the facts and circumstances of the case. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 36. Whether a defendant abused a position of actual or apparent authority is a factor to consider when determining whether conduct is outrageous. *Id.* A complaint alleging the intentional infliction of emotional distress "must be 'specific, and detailed beyond what is normally considered permissible in pleading a tort action.' " *Welsh v. Commonwealth Edison Co.*, 306 Ill. App. 3d 148, 155 (1999) (quoting *McCaskill v. Barr*, 92 Ill. App. 3d 157, 158 (1980)). This court has generally been hesitant to hold that an employer's retaliatory actions were extreme or outrageous enough to satisfy the first element of the tort of the intentional infliction of emotional distress. *Id.* at 154. "This reluctance seems to be grounded in a fear that, if the anxiety and stress resulting from discipline, job transfers, or even terminations could form the basis of an action for emotional distress, virtually every employee would have a cause of action." *Id.*; *Miller v. Equitable Life Assurance Society of the United States*, 181 Ill. App. 3d 954, 957 (1989).

¶ 28    In this case, our review of plaintiff's second amended complaint shows that plaintiff pled that his supervisor in Chicago called him derogatory names. He then quit and left work. The next day he informed a vice president and an operations manager of his supervisor's actions. After being promised that an investigation would be conducted, plaintiff agreed to be reinstated to work in another district. Plaintiff was then assigned to defendant's Merrillville, Indiana, office. Defendant's other district managers were told not to help plaintiff. At the Indiana office, plaintiff endured a long commute to work, as well as long hours. An operations manager, McNeil, told another district manager, Powell, that "we sent him to Merrillville to get the hell rid of his queer ass." After feeling exhausted and worried that his exhaustion was unsafe, plaintiff resigned. Plaintiff then brought this action for the intentional infliction of emotional distress.

¶ 29    The Act provides that "[i]t is a civil rights violation for a person, or for two or more persons to conspire, to *** [r]etaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment." 775 ILCS 5/6-101(A) (West 2010). Based on the allegations in his second amended complaint, plaintiff's allegations indicate a civil rights violation under the Act. Retaliation under the Act is further indicated by plaintiff's allegation that defendant's employee stated "we sent him to Merrillville to get the hell rid of his queer ass." In order for the circuit court to exercise jurisdiction over plaintiff's tort claim, plaintiff had to show that his tort claim was not inextricably linked to a civil rights violation, *i.e.*, plaintiff had to establish the necessary elements of the tort of the intentional infliction of emotional distress independent of any duties created by the Human Rights Act. *Maksimovic*, 177 Ill. 2d at 519. Therefore, plaintiff initially had to establish "that *** defendant's conduct was

extreme and outrageous." *Kolegas*, 154 Ill. 2d at 20. We hold that plaintiff failed to do so here. A review of the allegations of plaintiff's second amended complaint, stripped of the alleged civil rights violations, results in the remaining allegations that plaintiff had a long commute, difficult working conditions, long hours, and uncooperative colleagues and bosses. We cannot say, based on these allegations, that such conduct is "so extreme as to go beyond all possible bounds of decency, and *** regarded as intolerable in a civilized community." *Kolegas*, 154 Ill. 2d at 21. Accordingly, we hold plaintiff's tort claim is inextricably linked to a civil rights violation, *i.e.*, the retaliation he endured after reporting his supervisor's discriminatory conduct toward him. See *Maksimovic*, 177 Ill. 2d at 519. Therefore, defendant's claim is preempted and, thus, barred, by the Human Rights Act.

¶ 30        Additionally, we agree with the circuit court's finding that plaintiff's claim is barred by the exclusivity provision of the Workers' Compensation Act. 820 ILCS 305/5(a) (West 2010); see also *Doyle v. Rhodes*, 101 Ill. 2d 1, 10 (1984) (holding that the Workers' Compensation Act provides employers with an affirmative defense to common law tort claims against them). In order for plaintiff's claim to survive in this case, he had to prove "(1) that the injury was not accidental; (2) that the injury did not arise from his or her employment; (3) that the injury was not received during the course of employment; or (4) that the injury was not compensable under the [Workers' Compensation] Act." *Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 463 (1990). Before this court, plaintiff only argued that his injury was not compensable under the Workers' Compensation Act. Psychological injuries, however, are compensable under the Workers' Compensation Act "where the psychological injuries were related to and caused by a physical trauma or injury, *i.e.*, 'physical-mental' trauma." *City of Springfield v. Industrial Comm'n*, 291 Ill. App. 3d 734, 738 (1997) (citing *Pathfinder Co. v. Industrial Comm'n*, 62 Ill. 2d 556, 563 (1976)). We agree with the circuit court's finding that plaintiff's injuries were "physical mental" because "plaintiff allege[d] that the defendant worked him so hard and for so long a period of time that he could [not] physically take it anymore, and [a]nd as a result of the physical exhaustion, he suffered emotional distress." Accordingly, plaintiff's claim is additionally barred by the Workers' Compensation Act because plaintiff failed to show that his injury was not compensable under the Workers' Compensation Act. Therefore, the circuit court properly dismissed plaintiff's second amended complaint.

¶ 31                                                CONCLUSION

¶ 32        The judgment of the circuit court is affirmed.

¶ 33        Affirmed.